NEW-YORK,
May, 1821.

MECHANICS
AND FARMERS'
BANK
v.
SMITH.

Judgment for the plaintiff.

---

THE MECHANICS and FARMERS' BANK in the city of ALBANY *against* SMITH.

IN ERROR, to the Court of Common Pleas of *Albany.* *Smith* brought an action of *assumpsit* for money had and received to his use, against the *Mechanics'* and *Farmers' Bank* in the city of *Albany.* At the trial, in the Court below, *Chester Bulkley* was called as a juror, and challenged to the *favour,* by the plaintiff's counsel. Two of the jurors who had been impanelled, were sworn as *triors.* On the trial of the challenge, *Chester Bulkley* was called, that he might be sworn on his *voir dire,* and was objected to by the defendants' counsel, but the objection was overruled; and being sworn on his *voir dire,* the plaintiff's counsel, among other questions, asked him if he was the drawer or endorser of any note in the bank of the defendants. This question was objected to, but the objection was overruled by the Court; and the juror answered, that he was an endorser of a note in

A juror, challenged to the favour, may be sworn on his voir dire, and asked such questions as do not tend to his infamy or disgrace. The triors are to decide whether he stands indifferent between the parties.

In an action brought against a banking company, the juror, on being challenged, was asked, on his voir dire, whether he was a drawer, or endorser of a note in the bank, and answered, that he was not a

drawer, or interested in the bank, though he was an endorser of a note; and the Court not being called on for the purpose, and expressing no opinion as to the sufficiency of the evidence, the triors found, that the *juror* was not indifferent, and he was set aside: *Held,* that this was no ground of error.

An entry by a *teller,* or clerk of a bank, of the amount of a deposit in the bank book of a dealer with the bank, being the act only of the agent of the bank, and not of both parties, is not conclusive. If, therefore, the dealer can, afterwards, prove, that there was a mistake in the entry, he may recover, in an action for money had and received, the sum not credited.

Where the *teller,* or clerk of a bank, is called as a witness for the party, to prove the correctness of his entry, he may be asked, on his cross examination, whether he was not in the habit of making mistakes, as such teller, for the jury are to judge of the relative credibility and accuracy of the witnesses.

Though an incorporated bank may be authorized to make by-laws, rules and regulations, &c. such by-laws and rules cannot affect the rights or interests of third persons.

A by-law or rule, therefore, of a bank, that all payments made and received, must be examined at the time, does not prevent a party dealing with the bank, from showing, afterwards, that there was a mistake in his account of deposits and receipts.

NEW-YORK,
May, 1821.

MECHANICS
AND FARMERS'
BANK
v.
SMITH.

the bank of the defendants, but had no interest in the bank. The triors delivered their verdict, that *C. B.* did not stand indifferent between the parties, and thereupon the challenge was allowed, and he was set aside; and the counsel for the defendants excepted to the opinion of the Court.

*Lewis Moore,* a witness for *Smith,* the plaintiff, testified, that he was a clerk of *S.* That on the 28th of *November,* 1817, he went to the bank of the defendants with bank bills, and a piece of gold, which had been carefully counted by him and another clerk, and found to be 223 dollars and 18 cents, and the bills put in the bank book of *S.,* with a label, mentioning the amount. That the witness delivered the bank book to *Elliot,* the *teller* of the bank of the defendants, who counted the money, and asked the witness how much, and he took up the label which lay on the counter, and answered, 123 dollars and 18 cents, and the *teller* said that was right, and entered that sum in the plaintiff's bank book. The label was written by another person, and had not been seen by the witness before. The witness said, that he answered the teller from the label; but immediately supposing it to be wrong, he asked the *teller* if the amount was right, and the *teller* said it was. The witness immediately returned to the plaintiff's store, and told him, and *W.,* who had counted the money, that the *teller* had given credit for 123 dollars and 18 cents, and they told him it was a mistake, and he returned immediately to the bank, to have it corrected. He told the *teller* of the mistake, who said, that the label was only for that sum, that the mistake could not then be corrected, but if, when the cash account was settled, the money was there, the witness might send the next morning, and it should be corrected. On being applied to, the next morning, the teller said that the money was not there. The witness, on his cross-examination, said he was seventeen years of age. He stated the circumstances particularly, and was positive as to the mistake. He said, that he did not dispute with, or contradict the *teller,* at the time, because he was diffident, though he was certain there was a mistake of 100 dollars, made by the teller. The plaintiff having rested his cause on this evidence, the counsel for the defendants moved for a nonsuit, on the ground, 1. That the

plaintiff's bank book accompanied the deposit, and as the credit was then given, and the entry solemnly agreed to by both parties, at the time of the deposit, it became an ori- ginal entry, and was a settled account between the parties, and conclusive upon them; 2. Because, *Elliot*, the teller, who was the only person who counted the money at the time of the deposit, and made the entry, was, *quoad hoc*, agent of both parties, and possessing the best evidence, should have been called by the plaintiff as a witness. The Court over-ruled the motion for a nonsuit, and the defendants excepted to their opinion. The defendants then called *Elliot*, the *teller*, who was sworn as a witness, and stated the circumstances with great particularity, and was positive that there was no mistake, and that the entry in the bank book of the plaintiff was correct. The counsel for the plaintiff asked the witness, on his cross-examination, if he " was not in the constant habit of making mistakes," which question was objected to by the defendants' counsel; but the Court overruled the objection, and allowed the question to be put to the witness, who answered, that he had made mistakes, at different times, several of which he mentioned, and which had been corrected by him. The defendants' counsel then read in evidence the act incorporating the defendants, by the eighth section of which, " the President and Directors, or a major part of them, for the time being, may, by any rules, orders or by-laws, direct and prescribe the management, disposition, and application of the stock, moneys, property, estate and effects of the said corporation, the duties and conduct of its officers, clerks and servants, the election of directors, and all such matters and concerns, as appertain to the said corporation, and as are usual and necessary in monied institutions."

It was proved, that the *rules* of the bank were pasted in all the bank books, when the dealers with the bank commence business, one of which rules was as follows : " All payments made or received at the bank, must be examined at the time."

*Walker*, the other clerk of the plaintiff, who was sworn as a witness, confirmed the statement of the first witness, *Moore*, as to the sum being 223 dollars and 18 cents, which

NEW-YORK,
May, 1821.

MECHANICS
AND FARMERS'
BANK
v.
SMITH.

was delivered to *Moore*, on the 28th of *November*, 1817, to carry to the defendants' bank, to be deposited. That he made the label, and put it into the book with the bills, and that he, by mistake, wrote 1, instead of 2, in his note of the sum. This witness was proceeding to state other instances in which *Elliot*, the teller, had made mistakes, when the evidence was objected to ; but the objection was overruled by the Court, and the evidence admitted, on the ground, that it was admissible to impeach the credit and accuracy of *Elliot*, the witness for the defendants. The Court below charged the jury, that the question to be decided, was a mere question of fact, and without expressing any opinion on the facts, or as to the weight of evidence, left it to the jury to decide. The jury found a verdict for the plaintiff, for one hundred dollars and seventy cents.

The defendants' counsel tendered a bill of exceptions to the opinions of the Judges, on which the writ of error was brought to this Court.

*J. King*, for the plaintiffs in error : 1. The question put to the juror who was challenged, ought not to have been allowed, for whether he was a drawer or endorser of a note, or not, could not affect his interest in the cause. (3 *Bac. Abr.* 756. 765. *Juries*, E. 5. 12.)

2. The entry in the bank book of the plaintiff was, under the circumstances, an original entry, and a settled account between them, and ought to be considered conclusive ; unless fraud is shown, or a mistake manifest on the face of the account, or an error in the addition or subtraction of figures. (2 *Atk.* 113. 119. 2 *Bro. C. C.* 62. 4 *Vesey*, 118. 1 *Salk.* 182.) In the case of *The Manhattan Company* v. *Lydig*, (4 *Johns. Rep.* 484.) the court considered the clerk in the bank, in making the deposits and entries, as the agent of the dealer with the bank ; and that where the dealer's bank book accompanies the deposit, and the credit is then given, it is an original entry, conclusive on the bank, and forms an exception to the general rule, that accounts may be so far re-opened as to falsify particular items. The clerk is the agent of both parties ; (14 *Johns. Rep.* 484.) and his acts are binding on them.

NEW-YORK,
May, 1821.

MECHANICS
AND FARMERS'
BANK
v.
SMITH.

3. *Elliott*, the teller, was the only person who counted the money at the bank, and who made the entry of the amount of the deposit; and was, *quoad hoc*, the agent of both parties. His testimony was the best evidence, and he should have been called by the plaintiff, or a nonsuit granted. The evidence of *Moore*, entrusted to carry it to the bank, was of a very inferior character. Accident, or mistake, or misconduct, might more easily have existed in regard to him; but *Elliott*, who counted the money, must have known the amount. (*Phillips' Ev.* 167. *Bull. N. P. 293. Peake's Ev.* 10. 3 *East*, 192.)

4. The Court ought not to have permitted the witness, *Elliot*, to be interrogated as to all the mistakes he may have, at any time, made, as a teller of the bank, for the purpose of impeaching his accuracy. A witness is not to be questioned as to the various acts of his life, no way connected with the matter in controversy, in order to impeach his veracity. (*Phillips' Ev.* 210.) Besides, the witness was under his cross-examination, and he could not be prepared to answer these particular inquiries, though he might have been ready to repel any attacks on his general character. (*Peake's Ev.* 6. *note. Phillips' Ev.* 210, 211. 126. *Bull. N. P.* 295, 296.) He had no notice of an intention to inquire as to such facts. Again; it does not follow, because a witness, a year ago, made a mistake in the case of a third person, that he has, also, committed a mistake in this case. (7 *East*, 108. 2 *Camp. N. P. Rep.* 637. 2 *Binney*, 72.)

5. The defendants, as a body corporate, had power to make by-laws; and if they made and published a by-law, declaring that all mistakes must be corrected in the bank, at the time, the plaintiff was precluded from deriving any benefit from a re-examination after he had left the bank.

6. It was also proved to be the settled usage and practice of this and other banking institutions, to have mistakes examined into at the time, and not afterwards. This course of dealing was well known to the plaintiff, and he was bound to conform to it. (*Doug.* 510. 2 *Taunt.* 388. 4 *Burr.* 2298.)

*Vanderheyden* and *I. Hamilton*, contra. 1. It was fairly

NEW-YORK,
May, 1821.

MECHANICS
AND FARMERS'
BANK
v.
SMITH.

submitted to the *triors*, to decide whether the juror was dis-
interested between the parties; and they decided that he was
not. It being a challenge to the *favour*, it must appear that
the juror is above all exception, and wholly disinterested.
(3 *Bac. Abr.* 267. *Juries, E.* 2 *Johns. Rep.* 194. 2 *Caines*,
129.)

2. As to the conclusiveness of the entry in the plaintiff's
bank book; the case of *The Mahattan Company* v. *Lydig*, if
applicable, is in favour of the plaintiff. It shows that the
entry is conclusive on the bank, but not on the dealer.
The clerk is the agent of the bank only, not of both parties.

3. The by-law which has been set up to protect the defend-
ants, is directly contrary to the principles of the common
law. It can affect only the defendants, their officers and
servants. It can have no operation on third persons, or
control their rights. The usage or practice of banks does
not constitute a law or rule of conduct, unless it is uniform
and reasonable, and has existed a sufficient length of time.

4. *Elliot*, the witness, rested his claims to belief on his
alleged or acknowledged accuracy : to ascertain the just-
ness of that claim, it was proper to ask him, whether he had
not made mistakes in his business of teller. A witness may
be questioned as to a collateral fact; but when he has an-
swered the question, another witness cannot be called to
impeach the truth of his answer; though it is otherwise,
where the fact to which he is interrogated is matter in is-
sue.

*M'Koun*, in reply, said, that the question put to the juror
was not merely whether he was a debtor to the defendants
but whether he was collaterally responsible as an endorser
having answered that he was not a debtor, the other
question was improper. Whatever might be the answer of
the juror to such a question, it could not be supposed, in the
slightest degree, to influence his verdict. The Court were
to judge whether there was a good cause of challenge; and
could it appear that there was a good cause of challenge.
unless from the Court admitting the answer to this question
to be such a cause ? Our objection is not that the juror was
rejected, but that the Court allowed an improper question

to be put to the juror.   This is not a mere technical or formal objection, but a serious cause of error, and one of great magnitude.   It is no objection to a juror, that he is indebted to either party.   How, then, can it be a good cause of challenge, that he is a mere endorser, or contingently responsible ?

NEW-YORK,
May, 1821.

MECHANICS
AND FARMERS'
BANK
v.
SMITH.

WOODWORTH, J. delivered the opinion of the Court.

1. At the trial, in the Court below, *Chester Bulkley* was called as a juror, and challenged to the favour; he was sworn, on his *voir dire*, as a witness before the triors. A question was then put, whether he was the drawer or endorser of any note in the defendants' bank; the question was objected to, but the Court decided it was not improper, and the witness answered, that he was an endorser in the bank, but had no interest in the same, other than as endorser. An exception was taken by the defendants' counsel.

The truth of the matter alleged, as cause of challenge, must be made out by witnesses, to the satisfaction of the triors.   A juror challenged, may, on his *voir dire*, be asked such questions as do not tend to his infamy or disgrace. (3 *Bacon*, 266. *Jury*, E.)   The general rule is, that jurors must be *omni exceptione majores*.   The application of this rule to each particular case, where the partiality is not apparent, must be left to the sound discretion of the triors. (3 *Bac. Abr.* 765.)   The opinion of the Court was on the admissibility, not on the sufficiency, of the evidence.   They expressed no opinion to the triors.   Although I am not prepared to say, that the single circumstance of being an endorser of a note in a bank, would, of itself, support a challenge to the favour, yet it is easy to imagine that an endorser may have a strong bias on his mind.   The paper may have been discounted for his benefit, he may have received particular favour from the bank, or the maker may have failed, and the endorser, without indulgence, may be injured, if not ruined.   May not circumstances like these, make an impression on the mind of a juror, and justify his exclusion ?   If an inquiry of this nature is contemplated, the first question would be, whether the witness was a drawer or endorser.   That must lay the foundation for any subse-

NEW-YORK,
May, 1821.

MECHANICS
AND FARMERS'
BANK
v.
SMITH.

quent inquiry. It is proving one fact, which is either, *per se*, sufficient, or if not, must be proved, in order to connect it with others intended to be relied on, which, together, present a well-founded objection : if the party fails in connecting the fact of being drawer or endorser, with other circumstances, and the party objecting thinks the evidence insufficient, he may call on the Court to express an opinion to the triors as to its weight ; but, in this case, the Court were not called on to express an opinion to the triors, whether the evidence was sufficient, but to exclude the question. This was premature ; for in that stage of the inquiry, it did not appear that the question was improper and unnecessary. Very slight grounds of interest have been held sufficient, on a challenge to a juror ; as in *Wood* v. *Stoddard,* (2 *Johns. Rep.* 194.) where, in a *qui tam* suit under the act for preventing usury, which gives a moiety of the sum recovered to the poor of the town, where the offence is committed, it is a good cause of challenge against the jury that they are inhabitants of the town ; and in *Steinbach* v. *The Columbian Insurance Co.* (2 *Caines,* 133.) although it was unnecessary to decide on the challenge, which was, that one of the jurors was an underwriter ; yet the Court say, " underwriters can hardly be proper jurors in cases in which persons pursuing the same business, are parties."

The objection to the question cannot be sustained.

2. The second exception is, that the Court overruled the motion for a nonsuit, after the plaintiff rested his cause.

If there is any evidence before the jury to support the issue, although it may, in the opinion of the judge, be insufficient to establish the fact in controversy, the Court will not arrest the cause, but submit the evidence to the jury, as the proper tribunal to decide, under the advice of the Court. In this case, the evidence of *Moore* was, *prima facie,* sufficient to establish the plaintiff's right to recover. The entry in the plaintiff's book was the act of one party. The witness had no agency in counting the money, or making the entry, and although he answered from the label, 123 dollars 18 cents, not recollecting, at the moment, that the label was wrong, the error immediately after occurred to him. He then asked the teller, if it was right, who an-

swered that it was.  He did not contradict the teller, owing,
as he says, to his diffidence ; but he stated the mistake when
he returned, to the plaintiff, who, without delay, endea-
voured to have it corrected.  An entry made under such
circumstances, cannot be considered the deliberate act of
both parties, and, therefore, conclusive.  The correctness
of the entry was questioned very shortly thereafter, on the
same day, and as soon as the plaintiff was apprised of the
mistake.  Neither was the testimony of *Moore* objection-
able on the ground that the plaintiff had higher evidence.
*Moore* had counted the money before he left the store ; he
testified that he delivered it on the counter, to *Elliot*.  I con-
sider *Moore* and *Elliott* as equally entitled to credit, and
possessing the same means of ascertaining the amount of
money deposited.  The Court decided correctly in refu-
sing to nonsuit the plaintiff.

3. The third exception is to the question put to *Elliot* :
whether he was in the constant habit of making mistakes ?

An answer to this in the affirmative, neither impeached
his integrity, or his general correctness as teller ; mistakes
in other cases might well be considered by the jury who
were to decide on the accuracy of the witness.  If he had
made mistakes frequently before, the probability of mistake,
in this case, would be stronger than if it appeared that his
entries had always been accurate ; and as this cause turned
on the relative credibility and accuracy of the witnesses, the
testimony was proper to be considered by the jury, and
ought not to be rejected by the Court.

4. The fourth exception rests substantially on the same
ground; the plaintiff had a right to prove the facts given in
evidence by *Walker* ; they were connected with the issue
then on trial, and not collateral ; they were calculated, in
some degree, to draw in question the accuracy of *Elliot*,
and to contradict a part of his statement, as well as to sup-
port the previous testimony given by the plaintiff.

5. The fifth exception, is to the charge given to the jury.
The Court stated, that the only question before them was a
question of fact; that the bank was liable, if the money was
paid to the teller on the counter, in the usual course of
business, for the purpose of having the money deposited.

NEW-YORK,
May, 1821.

There is no principle of law involved in this cause, that can exonerate the defendants. Their liability is established, if the money was received by the bank, notwithstanding the rule or by-law which is relied on. The act of incorporation allows the president and directors, by rules or by-laws, to direct and prescribe the management and disposition of the stock, moneys, property, and estate of the corporation, and to prescribe the duties of its officers; but no authority is granted, or intended to be granted, whereby the interest of third persons can be affected, and their just claims defeated by the operation of a by-law. The power of making rules and regulations, is necessarily incident to a corporation; and it is generally inserted in the act of incorporation, to define its nature and limit its extent. I have never heard of an instance where a mistake was ascertained, that the bank have refused to correct it. In this case the jury have pronounced on the evidence, that the money was received by the defendants. The rule, or by-law, of the bank, does not discharge them; but leaves the question to be decided on its intrinsic merits.

On the whole, we are of opinion, that none of the exceptions are well taken, and that the judgment of the Court below ought to be affirmed.

Judgment affirmed.