# CHARLESTON.

THOMPSON v. DOUGLASS.

Submitted June 15, 1891.—Decided December 7, 1891.

| 35 | 337 |
|----|-----|
| 40 | 187 |
| 35 | 337 |
| 43 | 481 |
| 43 | 607 |
| 35 | 337 |
| 51 | 514 |
| 35 | 337 |
| 62 | 709 |
| f63 | 407 |

1. REVERSAL OF JUDGMENT—JUROR.
    The mere exclusion of a juror upon a challenge for cause upon insufficient ground will not be cause for reversal.

2. SALE.
    Where one sends goods to another as under a sale, and at the same time sends a bill of the goods, and the goods and bill reach the one to whom they are sent, whether he ordered them or not, in law he will be regarded as a purchaser, unless within reasonable time he either returns the goods or notifies the sender that he will not accept them.

3. SALE.
    What is reasonable time, is a question of fact for the jury.

4. SALE.
    Where such goods reach the person to whom they are so sent, though not ordered by him, he will be regarded as purchaser, if he exercises acts of ownership over them, or treats them in a way inconsistent with a recognition of another's ownership.

5. SALE.
    Where one so sends goods to another, and he disclaims to have purchased them, but permits a third person to take them, and convert them to his own use, this will make him liable as purchaser.

*M. Peck* for appellants, cited Code, c. 116, s. 17 ; 2 W. Va.
43

59, 165; 12 W. Va. 23; 11 S. W. Rep. 451; 3 W. Va. 556; 27 W. Va. 147; 1 C. Bates Partner §§ 443, 447; Id. c. 8; 4 So. Rep. 639; 4 S. E. Rep. 122; 6 Mich. 168; Schou. Bailm. & Carr. (2d Ed.) § 494; 93 U. S. 575; 56 N. Y. 544; 45 N. Y. 587; Schou. Bailm. (2d Ed.) §§ 294, 501; 27 W. Va. 75; 18 W. Va. 771; Benj. Sales (4th Ed.) § 703; 20 N. E. Rep. 670; 21 N. E. Rep. 1076; 19 S. W. Rep. 305; 5 So. Rep. 714; 22 Pac. Rep. 136; 9 S. E. Rep. 65.

*S. V. Woods and W. T. Ice* for appellees, cited Code, c. 116, s. 17; 19 Johns. 115; 4 Den. 9; 18 W. Va. 771.

BRANNON, JUDGE:

Thompson & Jackson brought an action of *assumpsit* against S. C. Douglass & Co. in the Circuit Court of Barbour county, and recovered judgment; and the defendants brought the case to this Court.

The first point of error made against the judgment is that the court excluded five persons from the jury because they were indebted to one of the defendant firm. Challenges of jurors, called challenges to the polls, are of two kinds —peremptory and for cause. Lord Coke said, as we can say to day, that peremptory challenges were allowed the party "upon his own dislike, without showing any cause." Our law allows each party in civil cases four such challenges; and in felony cases, to the State, two, and the accused, six. Challenges for cause are divided by the common law into challenges for principal cause and challenges to the favor—the former being where the cause assigned positively disqualified; the latter being causes which, though not conclusively disqualifying, yet threw suspicion of bias on the juror. Principal challenges were tried by the court, challenges to the favor by three triers; and, while these different modes of trial of challenges existed, it was very important to preserve this distinction in order to determine in which class the challenges would fall, in view of the different methods of trial of each. But our statute law requires challenges to be tried by the court, and thus the distinction between principal cause of challenge and challenge to the favor has become unimportant, and we commonly

call all challenges, challenges for cause. As Lord Coke said centuries ago may be said now: "The causes of favor are infinite." No enumeration was ever attempted of what causes might be alleged as grounds of challenges to the favor. It would be impossible to specify all that should be allowed in advance by a statute, for they depend upon each particular case, and the circumstances and parties to it. All concede that statutory disqualifications are not the only ones. Thomp. & M. Jur. § 175; *Dilworth's Case*, 12 Gratt. 689; Amer. & Eng. Enc. Law, 360. See also, Thomp. & M. Jur. §§ 152, 170, 171; 1 Thomp. Trials, § 331.

The cause assigned for the challenge of these jurors would fall under the head of challenge to the favor. But is the fact that a man is indebted to another good cause of challenge to exclude the indebted party from sitting as a juror in a case wherein the creditor is a party? Would a feeling of favor or fear move him, in the eye of the law, to render a false verdict? Practically, there is some force to say that where a party is greatly favored by a creditor, by indulgence, he would feel a favor towards his friend; and, with perhaps more force, that one largely indebted to another, so much indebted as to be at his mercy for his solvency, and even his home, might from fear fail to render a just verdict adverse to his creditor. On the other hand, it would be going quite far to say that simply the fact that one man is indebted to another would disqualify; that if he owes only a small sum, which he is able to pay at any time, or is a man of large means, or has more means than has his creditor, he should be rejected. I do not say that no case of indebtedness—one showing the debtor to be at the mercy and in the power of his creditor—might not exclude. I have, however, met with no case excluding, or of attempt to exclude, a juror for such cause, except one cited by counsel (*Bank* v. *Smith*, 19 Johns. 115) where, because the juror was an indorser on a note held by a bank, he was held disqualified by the triers, not by the court—the court having allowed that fact to go before the triers as an item of evidence to show bias; and, as the court above said, it was a decision on the admissability, not on the sufficiency, of the evidence to show bias; and the judge in the opinion

pointedly says that he would not undertake to say that the single circumstance that one was indorser on a note to the bank would of itself support a challenge to the favor, yet it was easy to imagine that an indorser might have bias, as in case the maker was insolvent, and the indorser in great danger at the hands of the bank. No other case is cited.

In this present case simply the fact of indebtedness is shown, without any appearance of amounts or the relative pecuniary standing of the parties. We therefore think the jurors were improperly excluded.

What then? Is it reversible error, or harmless error? Where a disqualified juror is put on a jury, it is of course error; but, where a qualified juror is improperly rejected, it is a wholly different thing. In such case the man taking his place is qualified and unexceptionable. Is he not as good a juror as the excluded one? Has not the party had what the law designs—a trial by an impartial jury? If you set aside the verdict, upon a new trial he can not get that rejected man. Is that man better than all the balance of the citizens of the State qualified for jury service? Shall a long, costly trial be upturned for such a cause only to give the party what he has already had—a fair jury? Is the administration of justice to bear the odium of such technicality?

In *Montague's Case*, 10 Gratt. 767, point 4 of the syllabus is: "The decision of a court allowing a challenge on the part of the commonwealth, or disallowing a challenge on the part of the accused, whether such challenge be a principal challenge, or a challenge to the favor, is matter of exception on the part of the accused, which it is his right to have reviewed in an appellate court." I am of opinion that this decision is erroneous, and hurtful to the practice of the courts and the administration of justice, and ought not longer to prevail. The doctrine that harmless error shall not reverse and render fair trials abortive has made great progress since the date of the decision cited. Judge LEE gave no reasons in the opinion, except that in criminal cases the law would intend harm to an accused where he is deprived of a right. He did not even refer to the *quære* in *Clore's Case*, 8 Gratt. 606, and the strong argument of Judge

Lomax, probably overlooking them. That argument is in my judgment, unanswerable. He said:

"When, upon the commonwealth's challenge, one of the *venire* is erroneously excluded from the panel, the effect is materially different from that produced by erroneously overruling the prisoner's challenge to a *venire* man. In the former case the exclusion of a particular man from the jury does not throw any obstacle in the way of impaneling an impartial jury of qualified jurors. The effect is only to set aside one alleged to be disqualified, and put in his place one that is qualified. This exclusion and substitution can in no wise affect the fairness and impartiality of the trial, because the trial is still had before a jury, all the members of which are free from exception. Not so in the other case. Then a disqualified juror is imposed upon the accused. He has not been tried by twelve qualified jurors, as the law entitled him; and the disqualification of the juror thus imposed upon him vitiates the verdict. Overruling his challenge, therefore, is just ground of exception on his part; and he is allowed to complain of the error, because he has been aggrieved. He has not been tried, as he was entitled to be, by twelve duly qualified jurors. But in the other case, notwithstanding the exclusion complained of, of one of the *venire*, he has had all that any prisoner can be entitled to demand—a fair and impartial trial before twelve jurors free from all exception. And again, if the exclusion of the *venire* man upon the commonwealth's challenge be a matter of exception and ground of error on the part of the accused, how can the supposed wrong that the error has inflicted upon him be repaired? It is only upon the reversal of the judgment to award a new *venire facias;* not that he may have the excluded *venire* man impaneled on his jury, but that he may again be tried by twelve qualified jurors; in other words, that he may have another trial—such precisely, in all respects, as that fair and impartial trial before a jury free from exception that he has already had."

As the juror's exclusion in that case was justified on its merits, the point was not decided, but put as a *quære.* *Henry's Case,* 4 Humph. 270, and *Arthur's Case,* 2 Dev. 217, are cited by Judge Lomax as sustaining his position. I will

add some others. *Snow* v. *Weeks*, 75 Me. 105, holds that the exclusion of a qualified juror is not reviewable; that the judge "may put a legal juror off, but can not allow an illegal juror to go on." In *Sutton* v. *Fox*, 55 Wis. 531 (13 N. W. Rep. 477) is a *quære* whether the rejection of a competent juror would be error; but the opinion strongly maintains that it is not. In *Tatum* v. *Young*, 1 Port. (Ala.) 298, it was held that "when a cause has been tried by a legally impartial jury, though the judge, on the application of the plaintiff, against the consent of the defendant, may have rejected a juror for a cause somewhat questionable as to its sufficiency, such rejection of the juror is not available in error." This opinion draws the line between the erroneous rejection and admission of a juror, and says, where the trial has been by a fair jury, there can be no prejudice, and quotes with approval what Judge STORY said in *U. S.* v. *Cornell*, 2 Mason, 91; "Even if a juror has been set aside for insufficient cause, I do not know that it is a matter of error, if the trial had been by a jury duly sworn and impaneled, and above all exception. Neither the prisoner nor the government in such case can have suffered any injury.

In *O'Brien* v. *Iron Works*, 7 Mo. App. 257, it was held that "the improper exclusion of a juror upon a challenge is not sufficient ground for reversal, where it does not appear that the party was prejudiced thereby." In *Maner* v. *State*, 8 Tex. App. 361, held, that excusing juror for insufficient cause was no material error, when it is not shown that the defendant was prejudiced. See *Dodge* v. *People*, 4 Neb. 220; *John D. C. v. State*, 16 Fla. 554; *Railroad Co.* v. *Franklin*, 23 Kan. 74; *State* v. *Ward*, 39 Vt. 225; *Watson* v. *State*, 63 Ind. 548.

There are some authorities on the other side. I notice that a very limited number cited by prisoner's counsel in *Montague's Case* sustain the contrary; perhaps only two of the American cases. An abuse of discretion by a court, or where it appears that prejudice in the particular case resulted from the exclusion, would be subject to review. Nothing of this kind appears here, and we are of opinion that the exclusion of these jurors, though on insufficient ground, is not reversible error.

The appellants assign error in the refusal of instructions asked by them, and in giving those asked by the plaintiffs. The plaintiff's claim was for a car load of flour which, upon the order of their travelling agent, they shipped to S. C. Douglass & Co., the defendants, but which the defendants deny having purchased. They claim that the order for the flour given by J. E. Heatherly to the plaintiff's agent was for another firm, J. E. Heatherly & Co., and not for S. E. Douglass & Co. (J. E. Heatherly was a member of both firms.) The defendants claim that at once on receipt of the bill for the flour, as for a sale to them, they wrote to the plaintiffs that the flour had arrived, that they did not order it and refused to take it. The plaintiffs claim that as soon as they received this notification they ordered their agent to go to Philippi, where Douglass & Co. did business, and the point to which the flour was consigned, and take charge of the flour, and that he did go there within three or four days from the date of the notification from Douglass & Co., and, when he reached Philippi, did not find the flour there but found that J. E. Heatherly had, under an arrangement with S. C. Douglass, one of the defendants, and with his consent, removed the car of flour to Belington for the use of J. E. Heatherly & Co., and that even if in fact the sale had not been made to S. C. Douglass & Co., yet by reason of such removal from the place of consignment, and its conversion to the use of J. E. Heatherly & Co., with the knowlege and consent of Douglass, the law made the defendants liable as if the sale had been made to them. These facts so alleged by plaintiffs were denied by the defendants.

Three instructions asked by the defence were refused.

Defendants instruction No. 2: "If the jury finds that S. C. Douglass, one of the defendants, notified the plaintiffs by letter, on the day said car and goods were removed by said Heatherly, that the firm of S. C. Douglass & Co. had not purchased said goods, and that said J. E. Heatherly had taken the same into his possession, claiming to have bought the same from the plaintiffs, and had removed the same to Belington, and that plaintiffs had time to follow said goods to Belington and reclaim the same, and failed to do so,

then the plaintiffs would be in default for such negligence, and the jury should find for the the defendants."

So far as this instruction goes, it is good ; but what if the removal was with the consent of S. C. Douglass ?   What if the sale was in fact to S. C. Douglass & Co. ?   It was claimed by plaintiffs, and they gave evidence tending to show, that the 'sale was to S. C. Douglass & Co., not to Heatherly or Heatherly & Co. ; but this instruction omits this contention.   Suppose everything in this instruction true, and yet that the sale was in fact to Douglass & Co. ; there ought not to have been a verdict for defendants.   It was claimed by plaintiffs that, even if the flour had not been ordered by S. C. Douglass & Co., yet it was consigned to them, and reached Phillippi in their name, which they knew, and that they received a bill of it as sold to them, and then S. C. Douglass, under an understanding with J. E. Heatherly, allowed him to take the flour to Belington for the use of J. E. Heatherly & Co.   Suppose this to be so, then the verdict could not go for the defence, for these principles of law are laid down in *Bartholomœ* v. *Paull,* 18 W. Va. 771, namely :

"Where one merchant sends goods to another, and at the same time sends invoices of such goods, and the goods and invoices are received, and he, disclaiming to have purchased them, permits another to take them, and use them, this is an act of ownership, making him liable as purchaser. Though he did not order them, he will in law be regarded as purchaser if he exercises acts of ownership over them, or treats them in a way inconsistent with another ownership."

An instruction can not take only a portion of the facts involved in a case under the evidence, and erect an hypothesis upon them only, disregarding others, and tell the jury, if that hypothesis be true, to find accordingly, because such hypothesis is not as broad as the scope of the evidence and the contention before the jury.   True, an instruction may present a partial hypothesis, but it must not make that partial hypothesis all-controlling in the case. *Storrs* v. *Feick,* 24 W. Va. 606.

I do not see why defendants' instruction No. 3 is not

good, under *Bartholomœ* v. *Paull*.   It presented the whole theory of their defence—the scope of their case; and they were entitled to a declaration of the law upon the facts stated in it, if found to exist by the jury.   I do not see that any other instruction performed its office.   Other instructions given at defendants' instance are not in the record. No criticism upon this instruction is given by counsel, or upon any of those offered by the defence.   I have perceived no objection to this instruction.

Defendants instruction No. 3 : "The jury are instructed that if they believe from the evidence that the sale of the flour in controversy was made by Robt. Felty to J. E. Healtherly for the firm of J. E. Heatherly & Co., at Belington, and the said Felty caused the said flour to be shipped by plaintiffs to S. C. Douglass & Co. without instructions from S. C. Douglass & Co., or from J. E. Heatherly, one of said firm of S. C. Douglass & Co., and that S. C. Douglass & Co. notified the plaintiffs within a reasonable time after the arrival of the flour at Phillippi of their mistake in the shipping the flour, and that S. C. Douglass & Co. exercised no act of ownership over said flour after they ascertained the contents of the car by opening it, then the jury should find for the defendant."

Defendant's instruction No. 5 : "If the jury believe from the evidence that after the arrival of the flour in controversy at Philippi the defendant S. C. Douglass, for S. C. Douglass & Co., refused to accept or receive the flour, for the reason that said firm had not bought or ordered the same from the plaintiffs, and that S. C. Douglass, by mistake, permitted or consented to the defendant J. E. Heatherly's removing the same to Belington, believing that he had bought the goods, and notified the plaintiffs by mail of such fact, and such notice was given to the plaintiffs in time for them to have reclaimed the goods at Belington, but that the plaintiffs declined and failed to do so, then the plaintiffs are not entitled to recover in this action."

This instruction is bad.   If S. C. Douglass consented to Heatherly's taking the flour away from the point to which plaintiffs consigned it, and where it should have remained so they could find it there when they should come to

reclaim it, though Douglass acted through mistake, it was his own mistake, for which plaintiffs were not responsible. If he trusted Heatherly's statement that he had bought the flour, it was his own act. He knew the flour had been consigned to S. C. Douglass & Co., and had received the bill as for a sale to them; and he must, at his peril, know the true facts as to a sale to Heatherly, and could not actively and knowingly participate by consent in the removal of the flour, and its conversion to the use of J. E. Heatherly & Co. Plaintiffs did not have to go to any other persons or place than those of consignment to exercise the right of reclamation.

I do not discover any error in the five instructions given at plaintiff's instance. They seem supported by the principles announced in *Bartholomae* v. *Paull, supra.* Criticism is made upon the word "received," used in the instructions, because it might be construed as "accepted;" but I do not think it is to be so construed, but as meaning that the flour came to hand, or reached its destination.

It is argued that the purchase, if made for S. C. Douglass & Co., was not within the scope of the partnership. The nature of that partnership is not fully developed in the record, but from what appears we can not say that it was not within such scope; nor can we say that Douglass's participation in the removal of the flour would not bind the partnership, if he did participate. As Judge Matthews said in *Irwin* v. *Williar*, 110 U. S. 506 (4 Sup. Ct. Rep. 160) what is the nature of the business of a partnership, what is necessary and proper in its prosecution, what is involved in the usual and ordinary course of its management by those engaged in it, at the place and time where and when carried on, are all questions of fact to be decided by a jury from a consideration of all the circumstances which, singly or in combination, affect its character or determine its peculiarities, and from them all its province is to ascertain and say whether the transaction in question is one which those dealing with the firm had reason to believe was authorized. And under the motion for a new trial we shall express no opinion upon that or other questions of fact, but leave them to the decision of a jury, where they, in the first instance, belong.

Because of the refusal of defendants' instruction No. 3, we must reverse and set aside the judgment, and remand it for a new trial.

REVERSED.   REMANDED.