## CHARLESTON.

FORD *et al.* v. FRIEDMAN *et al.*

Submitted January 11, 1895—Decided February 2, 1895.

WAIVER OF BREACH OF CONTRACT—IMPLIED ASSENT.

> Where goods are shipped by the seller to one who had given an order for them, but they are shipped so late that the buyer is not bound under the contract to accept them, and he writes to the seller that it is too late to accept them, and that he will be compelled to return them, and the seller replies by mail, recognizing the buyer's right to reject and return the goods, but asking him to accept them, and saying if he will do so, that he will give the buyer an extra credit on the same for thirty days, and the buyer does not in any way reply to such offer within a reasonable time, and does not reship nor in any way attempt to return the goods to the seller, the buyer will be presumed to have assented to the seller's offer, and to have accepted the goods, and will be liable therefor as purchaser.

TOMLINSON & WILEY for plaintiffs in error, cited 3 B. & P. 582; 47 N. Y. 36; 3 Am. Rep. 177; Benj. Sa. 246-271; 18 W. Va. 771; 35 W. Va. 337; 39 Conn. 31.

JOHN E. BELLER for defendants in error, cited 35 W. Va. 337; 21 Enc. of Law p. 534 and notes; 24 W. Va. 747; 8 W. Va. 575; 26 W. Va. 345; 2 L. R. Ex. 193; Beav. 502; 40 Fed. Rep. 525; 26 Mich. 452; 27 Minn. 208; 21 Enc. of Law p. 539.

J. S. SPENCER for defendants in error, cited 21 Enc. of Law, p. 531, 535, 539; 26 Mich. 452; 27 Minn. 208; 63 Ill. 288; 115 Mass. 159; Schouler on Pers. Prop. § 388; 12 Allen (Miss.) 522; 17 Wis. 44; Benj. Sa. (6 Am. Ed.) § 593; 2 Barb. (N. Y.)

37; 119 Ill. 379; 144 Mass. 100; 121 U. S. 255; 103 Mass. 327; 42 Mich. 296; 55 N. J. L. 320; 18 W. Va. 771; 35 W. Va. 337.

HOLT, PRESIDENT:

The plaintiffs, C. P. Ford & Co., of Rochester, N. Y., sued defendants, J. Friedman & Co., general retail merchants of Point Pleasant, W. Va., before a justice, for a part of a bill of shoes sent on order, and on the 19th day of October, 1893, obtained a judgment for one hundred and sixty nine dollars and ten cents, with interest from that date.

Defendants appealed to the Circuit Court of Mason county, and, neither party requiring a jury, the whole matter of law and fact was submitted to the court; and the Circuit Court, having heard all the evidence, was of opinion that plaintiffs were not entitled to recover, whereupon the plaintiffs moved the court to set aside the findings and grant them a new trial; but the court, on the 30th day of November, 1893, overruled the motion, and gave judgment for defendants, to which ruling the plaintiffs excepted, and brought the case here by writ of error.

The bill of exceptions sets out all the evidence, from which the undisputed facts are as follows: Some time in December, 1892, Mr. Marshall, a salesman of plaintiffs, came to defendants' place of business in Point Pleasant, and took from them an order for about one thousand dollars worth of shoes for the spring trade of 1893. Defendants, being then too busy to make out a list of quantities and sizes, agreed to send by mail the quantities and sizes wanted on the order. On the 13th day of January, 1893, plaintiffs wrote to defendants as follows: "Our salesman Mr. Marshall sent us a mem. order from you, stating that you would send for what goods you would require for spring shipment later. As we have such a large number of orders to make for spring, we would be pleased to have yours as early as possible, to give us plenty of time to make and ship to you without delay." On the 24th day of January, 1893, defendants wrote to plaintiffs, giving quantities and sizes wanted on their order. By letter of 27th January, 1893, plaintiffs acknowledged the receipt thereof, and say: "As requested, we will make and ship these goods at

once." On the 3d day of March, 1893, plaintiffs made shipment of part of the goods ordered, amounting in value to six hundred and ninety four dollars and thirty eight cents. These came to hand, and were accepted by defendants, about the 6th day of March, 1893. Defendants, after opening the goods, and finding those they most needed not among them, wrote to plaintiffs that they need not send the rest. Some time after that, but before the 8th of April, plaintiffs' salesman Mr. Marshall was again at Point Pleasant, soliciting from defendants another order. They told Mr. Marshall that they had not yet received all the goods of their first purchase; that it was then too late, and they did not want them. Mr. Marshall told defendants, if they came, not to accept them, but to ship them back.

On the 8th day of April, 1893, plaintiffs made another shipment on the original order, amounting to one hundred and sixty two dollars and thirty cents. Leaving out of view the sending by express, on the 29th day of April, one pair of shoes, charged at three dollars and twenty five cents, these are the goods in controversy. This shipment of one hundred and sixty two dollars and thirty cents was, in some way not explained, delayed on the railroad, not reaching Point Pleasant until the 22d day of April. The invoice, however, had reached defendants by mail, and they had made frequent inquiry at the depot for the goods. On the 18th day of April plaintiffs shipped to defendants another part of the original order, this amounting to forty four dollars. On the 20th day of April, 1893, defendants wrote to plaintiffs saying, in postscript, that they would be compelled to return their last invoice, meaning the one of one hundred and sixty two dollars and thirty cents, as it was too late to be getting them then. This letter is as follows:

"Point Pleasant, W. Va., April 20, 1892.

"Messrs. C. P. Ford & Co., Rochester, N. Y.

"Gents:

"We send you inclosed check for six hundred and ninety four dollars and thirty eight cents, per our account in full, less five *per cent.* and 45 ex. Please acknowledge receipt, and oblige, yours, truly, J. Friedman & Co.

"P. S. Gents: We will be compelled to return your last invoice, as it is too late to be getting them in now."

On the 22d day of April, 1893, the shipment amounting to one hundred and sixty two dollars and thirty cents reached the depot at Point Pleasant, and on the same day or early the next morning, the drayman brought them to the store of defendants, saying, "There are the two boxes of goods or of slippers that you have been looking for so long." Defendants told him that they did not want them, and he took them back to the depot. When the shipment of 18th of April came to hand does not appear, but we may infer about the same time. These goods of 18th of April were accepted, and some time after paid for. On the 24th day of April, 1893, plaintiffs received defendant's letter of 20th of April, and at once replied by letter of April 24, recognizing defendants' right to return the goods, as they had said they would do, but asking them to keep the shipment, and they would give defendants an extra dating on the same thirty days. This letter is as follows:

"(Dictated.)

"Rochester, N. Y., April 24th, 1893.

"J. Friedman & Co., Point Pleasant, W. Va.

"Gentlemen:—

"Inclosed find herewith a receipt for your remittance of the 20th inst. We notice that you say in your letter of remittance that you will be compelled to return goods to our last invoice on account of its being too late to receive now.

"We regret exceedingly that you should be compelled to do so. We have been doing our best with all our customers this season to get their goods through on time as nearly as possible. Owing to the new lasts and patterns this season which we have had to get out, with large numbers of orders received, it has been impossible for us to get out the patterns and do any better than we have for our customers. We ask you, with this explanation, to be lenient with us; and if you will keep these goods on your last shipment, we will give you an extra dating on the same of thirty days. We do not carry any goods in stock; and have no way of disposing of goods

except at considerable loss.    Awaiting the favor of your reply, we remain, yours, truly,

"C. P. Ford & Co."

This shipment of 8th of April of one hundred and sixty two dollars and thirty cents was never reconsigned or sent back to plaintiffs, but was left in the depot, where it still was on the nineteenth day of October, 1893, when this suit was instituted.    On the 11th day of May, 1893, C. M. Whittier, depot agent, wrote to defendants about this lot of goods and two others, as follows:

"May 11th, 1893.

"J. Friedman & Co., City: ·

"Gentlemen:—

"We are holding three different lots of goods refused by you on account of coming in late, and in the future will have to refuse same back after leaving freight house, except you take up in the regular way the expense bill, re-mark and reconsign in the regular way to be returned, when we will advance the charges if guaranteed.    We take this action in order to avoid holding goods in our freight house so long for disposition, as we have no authority to return to consignor without a regular course we have to follow in cases of this kind, which compels us to carry shipments two or three weeks, or two or three months, and sometimes longer.    Hoping you will not consider this notice too stringent, and see the position we are placed in, I am, as ever, your obedient servant.

"Resp't yours,

"Signed.                "C. M. Whittier, Agent."

Defendants returned to plaintiffs their statement of June 15th, with remark that plaintiffs' invoices of 8th of April and 29th of April (one pair of shoes, three dollars and twenty five cents) had been returned to them.    On the 21st day of June, 1893, plaintiffs sent defendants the following letter:

"(Dictated.)

"June 21, 1893.

"Messrs. J. Friedman & Co.,

"Point Pleasant, W. Va.

"Gentlemen:—

"We have just received from you our statement of June

15th, returned with remark that our invoices of April 8th and 29th had been returned to us. We find in looking up the correspondence that you wrote to us April 20th that you would be compelled to return our last invoice to us, as it was too late for them, and we replied on April 24th, asking you to keep the goods on your last shipment, and that we would give you an extra dating on them of thirty days' time. We heard nothing from you in regard to this matter until you returned our statement of May 25th, with remarks that invoices of April 8th and 29th had been returned to us, and that you would send a tracer after them. We have never received the shoes from you, and the above is all the correspondence we have ever received from you in regard to the same. Of course, we can not credit the goods to your account until they have been delivered to us. If you will have the kindness to have tracer sent and find where the goods are shipped to, and also send us bill of lading of the shipment, we will endeavor on our part, from this end, to keep trace where the goods were sent. They may have been returned through mistake to some other firm in this city or some other city. Hoping this explanation will be satisfactory, and awaiting the favor of your reply, we remain, very truly yours,

"C. P. Ford & Co."

To which the defendants sent the following reply, of June 24, 1893:

"C. P. Ford & Co.—Gents:

"Yours to hand, and will state that we have already sent another tracer after the goods returned to you, which you claim you have not received, as per request.

"Yours, truly,

"J. F. & Co.

"Point Pleasant, W. Va., June 24th, '93."

On 24th July, 1893, defendants sent to the plaintiffs the following letter:

"Point Pleasant, W. Va., July 24, 1893.

"Messrs. C. P. Ford & Co., Rochester,

"Gentlemen:

"In reply, your statement 20th inst., in which you request to make out a bill against the R. R. Co. for your bill April 8th

and 29th, will say the position we are in, exactly as we wrote you 20th April, that the goods came too late for us, and we never expected same, and told the agent here to return same. We to-day went to the Ohio R. R. office, and told them to send tracer after those goods, and the reply we have received that the goods is still here at the depot. So you can order the goods back from the R. R. Co., or you can let us know and we shall attend to it for you.

"Yours, truly, J. Friedman & Co.

To this letter plaintiffs replied, on 1st of August, 1893, as follows:

"(Dictated.)

"Rochester, N. Y., Aug. 1st, 1893.

"Messrs. J. Friedman & Co.,

"Point Pleasant, W. Va.,

"Gentlemen:—

"Your letter of July 24th was received during the writer's absence from home. We need hardly say that we were greatly surprised to receive a letter from you at this late day to the effect that bill of goods shipped to you April 8th were still at the depot in your place, and that, if we wished you to do so, you would have the goods ordered back. To write such a letter after having written to us several times that you had sent tracer to show delivery of the goods in Rochester is certainly contrary to the letters previously received from you. To repeat what we have already written you in our letter of June 21st, you advised us on April 20th that you would be compelled to return the goods in our last invoice. We wrote you on April 24th, asking you to keep the goods and that we would give you an extra dating of thirty days on last shipment. We heard nothing from you until you returned our statement of May 25th, with remarks that invoices of April 8th and 29th had been returned to us, and that you would send tracer after them. We wrote you in reply to that letter that we had never received the shoes from you; in regard to the matter that we, of course, could not credit the goods to your account until they had been delivered to us; asked you to have the kindness to send tracer to find where the goods were shipped to, and to send us a bill

of lading of the shipment, and that we would endeavor on our part, from this end, to help trace where the goods were sent, thinking they might have been returned through mistake to some other firm in this city. In reply to that, you wrote us on June 24th, stating: 'Yours to hand, and we have already sent another tracer after the goods returned to you, which you claim you have not received, as per your request.' Not hearing anything further from you, on July 20th we notified you that it being too late in the season to dispose of these goods to any other parties except at a large loss, and as you had been unable to trace these goods and show delivery to us, we must ask you to collect the amount from the railroad company. Notwithstanding your letter of July 24th, this is the way the matter now stands, and we must hold you responsible for goods shipped to you on April 8th and '29th. From what we have written you cannot say, nor would any one else say, but what we have done what is right in taking this position. When you first informed us that the goods arrived too late, we advised you that we would give you thiry days' extra time. You did not reply for more than one month. You then wrote us that you had returned the goods. We wrote you within three days for you to send a tracer. We hold several communications from you since that time, saying that you have sent a tracer to show the goods had been returned to us. As we expect to do what is right by our customers, we certainly shall hold them to giving us the same kind of treatment. We could not accept the goods if they were returned to us at this time, either by you or the railroad company, as we are in no way to blame in the matter, and have abundant evidence to prove the same.

"Very respectfully yours,

"C. P. Ford & Co."

The one pair of shoes sent by express on the 29th day of April, in completion of the order, we may infer, defendants say were returned by mail; but they never came to the hands of those who had sent them. Other letters passed that are in the record, but they bring out no new facts, and throw no light upon the points in controversy, which are purely legal.

Counsel for plaintiffs, C. P. Ford & Co., in the presentation

and argument of their case, make three points: *First*, That upon the delivery of the goods to the common carrier, they became the property of defendants, J. Friedman & Co., and were beyond the control of plaintiffs, except as to right of stoppage *in transitu* , which right exists only when the consignee is insolvent. To weed out the irrelevant as we go, no such right of stoppage exists or is claimed in this case. *Second*, Defendants are liable because they failed to return the goods within a reasonable time. *Third*, Defendants did not notify the plaintiffs within a reasonable time of their refusal to accept and pay for the goods.

For the purposes of this case, to avoid repetition and promote clearness of meaning, the term "delivery" will be used in the sense of transfer of possession; the term "receive," in the sense of receiving the possession; and the term "accept," in the sense of receiving the possession with the intention of retaining the goods, in performance of the contract of sale. See Tied. Sales, §§ 114, 115.

A delivery to the common carrier for transportation to the purchaser is a delivery to the purchaser, unless a contrary intent appears. The carrier receives as the agent of the purchaser. But the proposition cuts no figure in this case, for the following reasons: *First*, The goods were by the contract of sale to be sent as one assignment as a whole, at one and the same time, and not by installments. *Second*, They were to be made and shipped at once, "for the spring trade." The term "at once" is not to be taken literally, for that would be unreasonable, seeing that the goods had to be manufactured before they could be sent; but the term indicates that a prompt making and sending of the shoes was expected on the part of the buyer, and promised on the part of the maker and seller. One of the defendants, examined as a witness, says: "The custom was that in such cases you would get the shoes within two or three weeks." Evidence is admissible to show what the parties thought about the time of performance. See Tied. Sales, § 100. What is a reasonable time in such a case depends upon the facts of the particular case, and, as they were ordered for the spring trade, plaintiffs were bound by their contract to make and

ship them at least as early as the opening of spring—that is to say, about the 1st of March; certainly not later than the 6th day of March, the date of receiving the first consignment. Instead of sending the full order at that time, plaintiffs undertook to send them by installments; and, instead of sending them at once, deferred shipping the goods in controversy until the 8th of April; and by some delay, not explained, they did not reach their destination until the 22d day of April, when spring was then almost two-thirds gone. But we need not pursue further this branch of the case, for plaintiffs, after having received defendants' letter of 20th April, in which they say they will be compelled to return this last invoice, wrote in reply their letter of 24th of April, in which they recognize defendants' right to return these goods on account of their being sent and received too late to be accepted, and in the same letter offer to give defendants an additional credit of thirty days if they will keep the goods. Now came the time of the defendants to speak and to act. Goods had been sent to them on their order, which came to hand out of season, too late, and they notified the seller and consignor that they would be compelled to return them. The consignor says in reply: "We concede your right to return the goods, but regret exceedingly that you feel compelled to do so. We have been doing our best to get the goods of our customers through on time, as nearly on time as possible. Owing to the new lasts and patterns this season which we have had to get out, with the large number of orders received, it has been impossible for us to get out the patterns and do any better than we have for our customers. We ask you, with this explanation, to be lenient with us, and, if you will keep these goods, we will give you an extra dating on the same of thirty days. We do not carry any goods in stock, and have no way of disposing of them except at a considerable loss." Did the def.ndants return the goods as they said they would be compelled to do, reconsign and reship them? Or did they, within a reasonable time, notify the consignor that they would not accede to his last proposal to keep the goods? They knew the goods were in the depot, for the agent pointed them out, asked them by let-

ter to reconsign them if they did not intend to accept them. They did not even answer the plaintiffs' letter containing the new proposal until after more than thirty days had elapsed. During this time they had received and accepted the forty four dollar shipment made on the 18th day of April, ten days after the one in controversy; and when they did answer, by returning to plaintiffs their statement of account sent on the 25th day of May, it was accompanied with the remark that the invoices of 8th April and 29th April (the goods here sued for) had been returned to plaintiffs, and they would send a tracer after them; and, when the goods had failed to come to the plaintiffs, they wrote to defendants on the 21st day of June, requesting them to send to plaintiffs the bill of lading of the reshipment. Instead of sending the bill of lading as requested, they sent a letter of 24th June, saying that they had sent another tracer. Finally, on the 24th of July, 1893, they mailed to plaintiffs the letter saying "the goods are still here at the depot." A strange letter, in view of the fact that the depot agent, by letter of 11th May preceding, had requested defendants to re-mark and reconsign the goods which they had refused to accept, which re-marking and reconsignment defendants, though both examined as witnesses, make no claim of ever at any time having made, or of authorizing any one to make for them.

Upon the facts as they appear by this record, there can be but one conclusion: Such delay on the part of defendants, unexplained, was not reasonable, and such conduct was not consistent with the requirements of fair dealing, and on both grounds the law holds them liable for the goods as purchasers thereof. See *Bartholomae & Co.* v. *Paule*, 18 W. Va. 771; *Thompson* v. *Douglass*, 35 W. Va. 337 (13 S. E. Rep. 1015). Not having rejected plaintiffs' proposal to keep the goods within a reasonable time after they came to the depot, and not returning them as promised, they are presumed to have accepted them. See Tied. Sales, § 115. Actions may speak louder than words. Defendants not only made no reply for more than thirty days to plaintiffs' proposition that they should keep the goods in controversy, on an additional credit of thirty days, but during that time received and accepted

the installment of shoes shipped on the 18th day of April. This amounted to their assent to keep the shipment of 8th of April, which came to the depot on the 22d of April, which they said they would return, but did not return; and when at length, on the 21st day of June, they notified plaintiffs by mail that they had returned them, they sent no bill of lading, did not return them, but knew they were then lying in the depot, and that they were not returned, because they had failed and refused to re-mark and address them, in order that they might be returned.

The judgment must be set aside, and judgment be rendered for the plaintiffs.