# CHARLESTON.

## CARR *v.* COFFMAN.

Submitted March 15, 1910.    Decided December 19, 1911.

1.  SALES—*Rescission—Unreasonable Delay.*

    Delay for thirty days by the buyer. to rescind the purchase of
    a sow bought for breeding purposes, under a guaranty that she
    is pregnant, and giving him the right to rescind the sale if she
    should afterwards prove not to be pregnant, is not unreasonable
    delay.  (p. 193).

2.  SAME—*Propositions of Settlement—Acquiescence by Buyer.*

    Mere silence and failure to reply to a written proposition,
    when there is no legal duty to reply, does not amount to ac-
    quiescence therein, so as to constitute an agreement between
    parties.  (p. 193).

Error to Circuit Court, Mercer County.

Action by W. W. Carr against W. F. Coffman.  Judgment for
plaintiff, and defendant brings error.

*Affirmed.*

*Ritz & Ritz,* for plaintiff in error.

*Hale & Pendleton* and *Longley & Jordan,* for defendant in
error.

WILLIAMS, PRESIDENT:

This suit is to recover the price of a sow, known as Lady
Premier the III of Willowdale, which W. H. Coffman sold to
W. W. Carr on the 2nd of February, 1907, at the price of $425,
under the following guaranty, viz: "Every sow sold in pig is
guaranteed to be safe in pig, or will be kept at our risk and
expense until safely over two periods.  If by chance a sow should
come in again after shipping we will satisfy the buyers, either
by refunding his money and shipping charges and taking sow
back, or, if he prefers, we will substitute another sow in pig
and equally good, or else he can breed the sow himself and we
will refund him a reasonable amount for loss of time."

The sow was shipped to plaintiff on June 20th, and he was
notified that she was due to farrow the latter part of July, or

first of August. She did not farrow at that time, and plaintiff wrote defendant on the 27th of August that she had not farrowed and that there was no indication that she was with pig, and that on the 30th of August he would ship her back. In the letter he says: "I paid you $190 cash and gave you note for $500 for six hogs (5 sows and a boar) ('tis five) after returning Lady Premier 3rd of Willowdale I will have only Danesfield Majesty 2nd, $75 and Premier Lad, $55, making a total of $130. Please let me know what the express has been on hogs both ways, so that I may know just how we stand. * * * * * I do not like not to take the sows, but if you can't get them to breed with all of your facilities, they don't look promising for me off here by myself. Judging from your last sale you can resell them at much higher prices than I bought them, and I certainly hope so and wish you all success in future sales." Pursuant to this notice, plaintiff shipped the sow on the 30th of August.

On the 29th of August, 1907, defendant wrote plaintiff as follows: "Replying to your letter of August 27th, will say that we are almost grieved that Lady Premier 3rd of Willowdale did not prove to be safe. We felt sure that she was safe before we shipped her. She should have been safe to farrow long about the first of August. I am sorry that you allowed so much time to elapse in case you want us to breed her again. We will look out for this sow and do the best we can for her." On August 30th defendant again wrote as follows: "Lady Premier arrived. I will send her over to a lot in the woods. I will have to keep her in quarantine before I can let her come in contact with my hogs. In the crate she looks pretty good. I think we can fix her up for you, especially when the weather gets a little cooler. Lady Premier is in excellent condition at this time. We felt sure that this sow was safe before we shipped her. Possibly she had some accident," To this letter plaintiff made no reply, but on the 10th of October following he again wrote defendant, demanding a return of the money paid for the sow, and threatening to sue if the money was not refunded. On the 12th of October defendant wrote a lengthy reply to this letter in which he complained because plaintiff had kept the sow thirty or forty days after her time to farrow had passed, without making complaint, and says: "There was that much time lost.

When she was returned to us to be bred, we stated that we could not breed her until she passed through quarantine. * * * * * We think it is too soon for you to kick, and more especially when we have had one of your hogs ready to ship for sometime. You must consider that we have kept this hog for you and she has been no expense to you. This has been helping us to keep our guaranty." In this letter he also denies the right of plaintiff to demand a refunding of the price.

The facts are that when the sow was returned, defendant placed her in quarantine and kept her there about two months, that he then put her in what he called the detention lot, and after she had been in there for a week or ten days she became lame and never recovered from the lameness, and he never allowed his boar to go to her after her return. The sow died on the 27th or 28th of January, 1908, of pneumonia, having been sick with this disease only about three days. The suit was begun on the 17th of January, 1908.

Coffman defends the suit on two grounds: (1) He insists that plaintiff waived his right to "rescind" the contract of sale by his failure to act promptly after discovery that the sow was not in pig; and (2) that plaintiff's failure to reply to defendant's letter of August 30th amounted to an acquiescence in the proposition therein contained to re-breed the sow for plaintiff.

What were plaintiff's rights under the contract of warranty when he discovered that the sow was not in pig? Clearly he could elect to do any one of three things, all of which are expressly stipulated in the written guaranty. (1) He could return the sow and demand that the price be refunded; (2) he could return her and demand another, safe in pig, equally as good; or (3) he could keep her and breed her himself, and demand a reasonable sum for the loss of time in breeding. His letter of August 27th, above quoted from, indicates very clearly that plaintiff had elected to take the benefit of the first of said provisions. We do not see how his letter and his conduct, in view of the contract, could have been otherwise interpreted by defendant. He did not intimate that he was returning the sow to have her bred. But, on the contrary, he suggested to defendant that he can resell the sow at a better price than plaintiff had paid for her.

It is insisted that plaintiff did not exercise his right to "rescind" the contract within a reasonable time. But this is not a case involving the right of rescission, where no such right is reserved in the contract. Here the right to rescind is a part of the express agreement, and in rescinding the sale plaintiff is only exercising a contractual right. He is not breaking the contract, but he is complying with its very terms. Rescission of the sale is one of the three means stipulated in the contract of sale whereby, according to plaintiff's election, defendant can make good his guaranty. No doubt plaintiff would have to exercise his choice of rights within a reasonable time, but we do not understand that he is held to such strict diligence in exercising such a contractual right, as he would be if he were seeking to rescind a contract of sale for fraud. But he should, at least, be reasonably diligent; and we think plaintiff has shown such diligence. He explains why he did not ship the sow back as soon as he learned that she was not in pig, and, in view of the facts in this case, we do not think the delay was unreasonable. He testified that another sow that he bought of defendant had gone two weeks over the time when he was advised she would farrow, and that he wanted to give Lady Premier a fair test, and be sure she was not in pig before returning her, and furthermore, that at the time he became satisfied she was not in pig, he knew defendant was in Illinois, and he wanted to reship the sow when defendant was at home, and waited for his return. Moreover, it appears from defendant's own evidence that the delay was no disadvantage to him. He states in his letter that he would "fix her up" when the weather got cooler, meaning he would have her bred to his boar. It was then the last of August. Plaintiff had kept the sow through the hot month of August, a time when defendant would not have bred her, if he had had her.

This case is not controlled by *Ford* v. *Friedman,* 40 W. Va. 177, as counsel for defendant insist. The goods, in that case, were not sold upon a guaranty, as was the sow in the present case. In that case the buyer refused to receive the goods because they were shipped too late for the spring sales, for which they had been bought. The seller wrote the buyer recognizing his right to return the goods, and proposed that, if he would ac-

cept them, he would extend the time of payment. To the letter the buyer made no reply, and did not return the goods. The court properly held, in that case, that fair dealing required that the buyer should either have replied to the seller's letter, or re-marked the goods for return and mailed to seller the bill of lading, and that, not having done either, his silence and his refusal to act amounted to acquiesence in the seller's proposition to keep the goods in consideration of an extension of the time of payment. ·But in the present case the sow was returned in a reasonable time, pursuant to express agreement that she might be returned and the price refunded, if she proved not to be in pig, and was received by the seller "in excellent condition," as he himself states. The buyer then owed the seller no further duty. He had done all that the seller had any right to require, or to expect, of him under their agreement. The seller then had both the sow ·and her purchase price. The contract of sale did not provide that the buyer might return the sow to have her re-bred, and, therefore, the seller had no right to interpret the buyer's letter, or his action in returning the sow, to mean that he wished her to be re-bred. In view of the terms of the agreement, the return of the sow could have meant nothing more, or less, than a rescission of the sale.

But, suppose defendant did interpret plaintiff's refusal to reply to his letter of August 30th to be an acceptance of the proposition therein contained, his own evidence clearly proves that he was not thereby misled to his injury. He did not attempt to rebreed the sow, notwithstanding he had her in his possession from August 30th to some time in November, during nearly all of which time she appears to have been doing well. He does not explain why he did not let his boar to her on some cool morning in October, after she had been in· quarantine for more than a month. He has not shown reasonable diligence to comply with his own proposition to which he now seeks to hold plaintiff bound, as if it had been accepted. He first complains that plaintiff did not return the sow soon enough, but after receiv- ·ing her "in ·excellent condition," as he states, he placed her in quarantine and kept her there for two months, and then transferred her to the detention lot and kept her there for a week or ten days before she became lame, and all this time he did not

let his boar to her, and the only explanation given is, that there was danger of losing his boar by allowing him to go to a sow, when the temperature of the weather was above seventy degrees.

As to the second point of defense, that plaintiff's failure to reply to defendant's letter of August 30th, should be construed to be an acquiesence in the proposition to re-breed the sow, it may be said that that was a thing wholly different from anything stipulated in the agreement. It was a proposition which required acceptance before becoming an agreement. Mere silence and refusal to accept a proposition will not be construed into acquiescence, when there is no duty to reply. Carr's failure to reply to Coffman's letter was not an acquiescence in the proposition submitted to re-breed the sow. There is no evidence that their minds ever met on that proposition. True, plaintiff testifies that he had not fully made up his mind not to keep the sow, until about the 10th of October, but his indecision was never communicated to defendant, and, therefore, he could not have been misled by plaintiff's silence. He may have been all that time deciding whether, or not, he would accept defendant's proposition. Such proposition, being a departure from the original contract of sale, could not become binding upon plaintiff until it was accepted, and it never was accepted. The judgment of the lower court will be affirmed.

*Affirmed.*