𝔚𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

P. J. RENNOLDS, TRADING AND DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF J. A. RENNOLDS & BRO., v. J. W. AVERY.

March 16, 1922.

Absent, Burks, J.

1. SALES—*Acceptance of Part of Shipment of Defective Goods as Implied Agreement to Accept the Whole.*—The rule that acceptance and appropriation of a part of a shipment of goods, with full knowledge of deficiency in their quality and quantity, implies an agreement for the acceptance of the whole, has no application where the partial acceptance is induced by such a reason that there is no inconsistency between such acceptance and the refusal to accept the residue of the goods on the ground that they do not conform to the contract requirements with respect to quality, etc.

2. SALES—*Acceptance of Part of Shipment of Defective Goods as Implied Agreement to Accept the Whole—Instructions—Case at Bar.*—In the instant case, an action by the seller of piles against the purchaser, the purchaser's inspector accepted part of the piles which were worm-eaten, rotten and not merchantable. The piling which the seller refused to accept was probably in no worse condition than the piling accepted. The inspector testified that he accepted the piling under the mistaken impression that the piling had become unmerchantable because of the fault of the purchaser in not having had it inspected and accepted sooner, it not being the custom of the purchaser to allow sellers to lose through his neglect. The trial court instructed the jury that if the piling which seller refused to accept was of the same quality as that accepted, the seller was bound to accept and pay for the rest of the piling, and refused to instruct them that if the piling was accepted under the mistaken idea that it was injured by the fault of the seller, there was no implied agreement that all the piling was accepted.

*Held:* That this took the question of fact as to the reason for

the partial acceptance, and all consideration of the inspector's testimony bearing upon it, entirely away from the jury, and was harmful error.

Error to a judgment of the Circuit Court of Charles City county in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

This action was instituted by J. W. Avery, the defendant in error (who will be hereinafter called plaintiff), against P. J. Rennolds, trading and doing business under the firm name and style of J. A. Rennolds & Bro., the plaintiff in error (who will be hereinafter called defendant). By the action, the plaintiff seeks to recover of the defendant damages for the failure and refusal of the latter to accept certain piling delivered by the plaintiff on a certain landing, which the plaintiff claims the defendant agreed to accept and pay for at certain prices when so delivered.

There have been two trials of the case. On the first trial there was a verdict for the plaintiff for $750.00 damages, which the trial court, on motion of the defendant, set aside. On the second trial there was again a verdict for the plaintiff, this time for the sum of $946.92 damages. The trial court entered judgment in accordance with the last-named verdict, and it is that judgment which is under review.

The defendant is a large dealer in piling, and the plaintiff for a number of years has been selling pine piling to the defendant. This dealing between the plaintiff and defendant had been going on over a period of about twelve years before the present litigation arose. The dealing proceeded under a general contract or understanding between the parties, in accordance with which no specific quantity of piling to be delivered by the plaintiff, or specific prices to be paid by the defendant, were agreed upon; but it was mutually understood that the defendant would, from time

to time, accept in the usual course of business whatever pine piling the plaintiff delivered, of certain standard sizes and lengths, of merchantable quality and condition, at certain landings, the acceptance of the piling by the defendant to be through its inspector, with the right to reject such piling as did not meet the standard size and length requirements and as was not of merchantable quality and condition; and the prices to be paid were to be the market prices which the defendant was, at the time and place of each inspection and acceptance, paying to others generally for piling of the particular sizes, lengths, quality and condition which the piling delivered by the plaintiff might be found to conform to, upon the inspection of it.

The plaintiff claims that, acting under the general contract or understanding mentioned, he, between the latter part of July and November 1, 1917, delivered on Courthouse creek landing, in Charles City county, 800 sticks, or pieces of pine piling, of standard sizes and lengths and of merchantable quality and condition.

There is a sharp conflict between the testimony before the jury for the plaintiff and that for the defendant, on the subject of the condition of the piling when it was delivered on the landing. The testimony for the defendant is to the effect that it was all more or less worm-eaten, rotten, etc., and that none of it was in merchantable condition when delivered on the landing.

Through its inspector, Hall, the defendant did, however, on September 28, 1917, inspect and accept 214 sticks, and on October 13, 1917, 125 sticks—making 339 sticks of the piling on the landing aforesaid, which were accepted by the defendant, for which the defendant, in due course, paid the plaintiff. That, however, left of the said 800 sticks, according to the claim of the plaintiff, 461 sticks of the piling still remaining on the landing as of November 1, 1917, unaccepted and unpaid for. This residue of piling the defend-

22

ant refused to accept, and it was to recover damages for such refusal of the defendant that the action was brought.

Among the grounds of defense filed by the defendant is the claim that the defendant was justified in his refusal to accept such residue of the piling because all of it was more or less worm-eaten, rotten, etc., and none of it in merchantable condition when it was delivered on the landing. And the testimony for the defendant was to the effect, as aforesaid, that all of the piling the defendant failed and refused to accept was in such condition, and that none of it was in a merchantable condition when delivered on the landing.

It developed, however, from the evidence introduced in the progress of the trial (the last trial, being here referred to), that the piling which the defendant refused to accept and left on the landing was probably in no worse condition than the piling the defendant accepted and paid for. To explain the acceptance of the 339 sticks of piling under such circumstances, Hall, the inspector and a witness for the defendant, testified, in substance, as follows:

That the 339 sticks of piling which were accepted were not in fact in a merchantable condition. That he accepted them, however, under and because of the mistaken impression that they had gotten in that condition while on the landing awaiting inspection, due to the fault of the defendant in not having sent and had them inspected and accepted sooner. That it was the custom of the defendant not to allow any one to lose through his neglect, and that, acting upon that custom and because of the mistaken impression aforesaid, the witness accepted the 339 sticks, as aforesaid. That but for such mistake, none of the 339 sticks of piling would have been accepted.

*M. H. Barnes* and *R. E. Peyton, Jr.,* for the plaintiff in error.

° *Henley, Hall, Hall & Peachy,* for the defendant in error.

· SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

There are a number of questions raised by the assignments of error, but in the view we take of it we find one · of them decisive of the case, and that is this:

1. Did the court err in giving instruction No. 3 at the request of the plaintiff and in refusing instruction "E," asked for by the defendant, on the subject of the effect of the acceptance and appropriation by the defendant of a part of the piling which the plaintiff delivered on the landing and tendered as in performance of the contract on his part?

This question must be answered in the affirmative, in view of the testimony for the defendant on this subject which was taken from the consideration of the jury by this action on the part of the court.

Instruction No. 3 in question is as follows: "The court instructs the jury that if they shall believe from the evidence that the defendant had agreed to purchase from the plaintiff eight hundred sticks of pine piling, and that said plaintiff hauled the said piling to the landing on Courthouse creek, ready for delivery, and notified the defendant that said piling was ready for delivery; and if the jury shall further believe from the evidence that the defendant, by his agent, C. C. Hall, inspected and accepted three hundred and thirty-nine sticks of said piling, and that the piling so accepted by the said defendant, through its agent, was of like quality and condition with the rest of the sticks of pine piling left on said landing, it there and then became the duty of said defendant to accept and pay for the rest and residue of said piling. And if the jury believe from the evidence that four hundred and sixty-one sticks of pine

piling was left upon said landing of like quality with those accepted by said defendant, and that the said defendant has failed or refused to accept and pay for same, then you must find for the plaintiff and assess his damages at the contract price for said piling, less the price received by the plaintiff for the sale of said piling, provided you shall believe from the evidence that the said plaintiff sold and disposed of said piling to the best advantage and with proper diligence in disposing of said piling." ·

Instruction "E" in question. is as follows: "The court instructs the jury that if they believe from the evidence there was an acceptance of a part of the piling by the agent, Hall, under the mistaken idea that the piling were injured by the fault of his principal, Rennolds, and he accepted the same according to usual custom, then there was no implied *warranty** that all the piling were accepted." (Italics supplied.)

[1, 2] The plaintiff relies on *Syer & Co.* v. *Lester,* 116 Va. 541, 82 S. E. 122, to sustain instruction No. 3. It is there held that "acceptance and appropriation of a part of a shipment of goods, with full knowledge of deficiency in their quality and quantity, implies an agreement for the acceptance of the whole." But this rule may need qualification where a single shipment or alleged delivery of goods is involved; and certainly it has no application where more than the partial acceptance is induced by such a reason that there is no inconsistency between such acceptance and the refusal to accept the residue of the goods on the ground that they do not conform to the contract requirements with respect to quality, etc. Such was the character of the reason for the partial acceptance which the defendant claimed in the instant case. The question of fact, whether that was the

---

*The word "warranty" is supposed to be a typographical error; the word "agreement" being doubtless the word actually used in the instruction.

true reason for such partial acceptance, should have been left to the decision of the jury upon all the evidence in the case. The defendant had the right to have the jury consider the testimony of Hall on that subject. The refusal of instruction "E" and the giving of instruction No. 3 in the form in which it was given took that question of fact, and all consideration of Hall's testimony bearing upon it, entirely away from the jury. This was error and harmful error, because of which we feel constrained to reverse the case.

As to the other assignments of error:

As the other assignments of error present no novel question, and as the case will be reversed on the ground above stated, we deem it sufficient to say as to such assignments of error that we find no merit in any of them.

The case will be reversed, and a new trial *de novo* awarded, to be had in conformity with the views above expressed.

*Reversed.*