# CHARLESTON.

W. E. KEMBLE v. J. G. WILTISON AND OTHERS.

Submitted October 10, 1922.   Decided October 17, 1922.

1.   COURTS—*Courts Have Inherent Power to Adopt Reasonable Rules for Administration of Justice; Rule Depriving Litigants of Long-Exercised Important Right in Administration of Justice Not Reasonable.*

   Courts of record have the inherent power to pass reasonable rules for the conduct of the business before them, but a rule which has no apparent tendency to facilitate the transation of business, and deprives litigants of an important right long exercised by them in the administration of justice, is not a reasonable rule. (p. 35).

2.   SAME—*Right of Litigants to Move to Set Aside Verdict and Judgment Within Term Time Cannot be Denied by Rule of Court.*

   The right of one adversely affected by a verdict to move to set it aside at the same term at which it is returned by the jury, or at any time before judgment is rendered thereon, should judgment not be rendered at the same term at which it is returned, being a substantial one, having for its purpose the correction of errors by the trial court, may not be abridged or taken away by a rule of court denying the right to make such motion after two days from the return of the

verdict, it not appearing that such abridgement of the right in any way facilitates the administration of the law.   (p. 36).

'3.   APPEAL AND ERROR—TRIAL—*Exception or Objection to Overruling Motion to Set Aside Verdict is to Advise Court That Ruling Not Acquiesced in But Will be Further Challenged; Suspension of Judgment on Application for Writ of Error Constitutes Sufficient Exception to Ruling of Court on Motion to Set Aside Verdict.*

The purpose of an exception or objection to the action of the trial court in overruling a motion to set aside a verdict is to advise that court that his ruling is not acquiesced in, but will be further challenged; and where the party whose motion is overruled does not formally except to the ruling of the court, but does express a desire to apply to the Supreme Court of Appeals for a writ of error, and asks for and obtains a suspension of the judgment for that purpose, this will be sufficient to advise the court that his judgment is not acquiesced in, and will constitute an exception or objection to the overruling of the motion to set aside the verdict.   (p. 37).

4.   SALES—*No Particular Form Required to Constitute Express Warranty of Quality in Sale of Chattels; Any Affirmation of Quality Made During Negotiations, on Which Buyer Relies, Constitutes Express Warranty.*

No particular form of words is required to constitute an express warranty of quality in the sale of personal chattels. Any affimation of such quality made at the time of, or during the negotiations resulting in the sale, upon which the buyer relies, will constitute an express warranty.   (p. 37).

5.   SAME—*Remedies of Buyer of Personal Property Where Express Warranty Breached, Stated.*

In the case of an executed sale of personal property under an express warranty, the buyer may, if the property delivered does not correspond with the terms of the warranty, either keep the property and sue for breach of the warranty; or, in case the purchase price has not been paid, keep the property and recoup the damages sustained by reason of the breach of warranty in a suit brought against him to recover such purchase price; or rescind the contract and return, or offer to return, the goods to the seller, and in case of the seller's refusal to return the purchase price, if it has been paid, maintain an action therefor, and in case the purchase price has not been paid, such breach of warranty will be a defense to a suit therefor.   (p. 37).

6. SAME—*Buyer Must Promptly Inspect Goods and Offer to Re-
turn Them to Rescind Contract for Breach of Warranty.*

In order to avail himself of the right to return the goods
and rescind. the contract, the buyer must promptly inspect
or test the goods and with reasonable promptness return, or
offer to return them, in case they do not meet the require-
ments of the warranty.

Error to Circuit Court, Mineral County.

Suit by W. E. Kemble against J. G. Wiltison and others.
Judgment for plaintiff, and defendants bring error.

*Reversed and remanded.*

*H. G. Shores* and *Wm. MacDonald,* for plaintiffs in error.

*R. A. Welch,* for defendant in error.

RITZ, JUDGE:

This is a suit to recover the amount of a negotiable prom-
issory note given by the defendants to the plaintiff for the
purchase price of a second-hand automobile. On the trial of
the case in the circuit court the defendant's defense was
held to be insufficient and a verdict directed for the plain-
tiff for the amount of said note with interest.

Upon the trial the plaintiff introduced the note in suit
and testified that it had not been paid. The defendant Wil-
tison then, in support of the plea of non assumpsit, showed
that the note had been given as the price of a second-hand
automobile purchased by him from the plaintiff, and that
his co-defendants, John Taylor and Mrs. E. C. Taylor, his
father-in-law and mother-in-law respectively, were simply
his sureties on the note, although they signed the same as
joint makers. He contended that at the time of the sale of
the automobile to him the plaintiff expressly warranted that
it was in first-class condition, and that this express warranty
was made, not only by the plaintiff himself, but by the plain-
tiff's agent who was assisting in negotiating the sale; that
as a matter of fact the automobile was not in first-class con-
dition, but was entirely worn out, and could not be placed
in running order because of this fact; that within a few days

after the automobile was delivered to him, upon testing the same, he discovered this fact, and upon discovering it went to the plaintiff and demanded rescission of the contract; that the plaintiff refused to rescind, and when the note came due brought this suit. As to the statement that there was an express warranty that the automobile was in good condition, he is corroborated by both of his co-defendants, and as to the fact that the automobile was so worn from long use that it was not in first-class condition, and could not be put in first-class condition, he is fully corroborated by other witnesses. The court below, however, held that this constituted no defense to the note, and directed the jury to return a verdict in favor of the plaintiff for the full amount thereof.

The plaintiff insists that the judgment rendered upon the verdict should not be disturbed: First, for the reason that under a rule of the circuit court of Mineral county a motion to set aside a verdict is required to be made within two days after the verdict is returned, and reasons for setting aside the same assigned with the motion, and that while the defendant made his motion upon the coming in of the verdict to set it aside, he did not assign the reasons for the motion for more than two days thereafter; second, for the reason that this court cannot consider any of the questions raised upon this writ of error because the defendant, upon the overruling of the motion to set aside the verdict, took no exception to that ruling; third, for the reason that even though this court can consider the matters arising upon the defendant's bill of exceptions, the evidence does not show that there was any express warranty; and lastly, for the reason that even though the evidence is sufficient to show an express warranty, or to go to the jury upon this question, still the defendant is not entitled to any relief, inasmuch as it was an executed contract of sale, and there was no plea or notice of recoupment of damages, nor was there any proof to show the amount of damages suffered by the defendant by reason of the breach of warranty.

That a trial court has inherent power to adopt reasonable rules governing the administration of justice, there is no

doubt,—*Starr Piano Co.* v. *Burgner,* 89 W. Va. 475; *Teter* v. *George,* 86 W. Va. 454—and if the rule of the circuit court of Mineral county relied upon is a reasonable rule, then the plaintiff's contention is correct, for it appears from the record that while the defendants made a motion to set aside the verdict immediately upon its coming in, they did not assign grounds therefor for more than two days thereafter, and the rule requires that the motion shall be made and the grounds assigned within two days. The question, therefore, arises, is this rule a reasonable one, and such a one as the court could adopt for the guidance of those resorting to it for the settlement of their difficulties? It must be borne in mind that without this rule a litigant against whom a verdict was rendered had the right to move to set aside that verdict at any time during the term at which it was returned, and if no judgment was rendered thereon during that term, at any time before judgment thereon. This right of the party adversely affected by a verdict has been recognized for such a length of time that it is difficult to discover its origin. The reason of it, however, is clear. It is a practice having for its purpose the accomplishment of exact justice between the parties by giving the court, as well as counsel engaged, time for deliberation and consideration, after the verdict is returned, for the detection of any errors of law committed by the court, with the right to correct them without resorting to appellate process. That it has accomplished a beneficent purpose cannot be doubted. In the progress of trials judges and lawyers engaged therein are not always in a position to give to the question arising that mature consideration which their importance often requires, and if the trial court and counsel engaged are permitted to review the proceedings of the trial in a calm and deliberate way, after the same has been concluded before the jury, oftentimes errors will be discovered and corrected by the trial court without compelling the parties to resort to the expense of appellate process. Is there any good reason for the adoption of such a rule? We confess we perceive none. It cannot be said that it speeds the determination of the cause, for under the

statute the judgment cannot become final until the end of the term, and the rule does not contemplate or require the rendition of judgments upon verdicts at any particular time. We are, therefore, of opinion that a rule which deprives litigants of a substantial right enjoyed for such a length of time, without accomplishing any good purpose, is not a reasonable rule. A rule of court will not be allowed to change a practice which has existed·for centuries and accomplished during that time most beneficent results, unless there exist most potent reasons therefor. No such reasons are apparent here, and we think this rule an unreasonable attempt upon the part of the trial court to curtail the rights of the parties.

The next inquiry is, can this court look to the bill of exceptions filed in this case for the purpose of reviewing the action of the trial court? The record shows that when the trial judge overruled the motion to set aside the verdict, the defendants expressed an intention of applying to the Supreme Court of Appeals for a writ of error to review the court's judgment, and asked for a suspension of the judgment for that purpose, which was granted. The judge certifies in the bill of exceptions that no formal objection or exception was made at the time to the overruling of the motion. The purpose of excepting or objecting to the ruling is to advise the court at the time that his ruling will not be accepted as final, but that the same will be challenged, either by again calling it to his attention, or by appealing to another tribunal for that purpose, so that we think it may be said that any action upon the part of a person affected by such a ruling, which distinctly notifies the court that the ruling is not acquiesced in, but will be challenged, is a sufficient objection or exception thereto. *Gilmer* v. *Sydenstricker,* 42 W. Va. 52. Courts will not sacrifice susbstance to form to defeat a litigant of a right to have his case reviewed, and to hold in this case that the failure of the defendants to except in terms deprives them of the right to have their case reviewed by this court would be to enforce against them the strict letter of a technical rule without regard to its spirit.

Coming then to the merits of the case, as presented by the

record, we find that the defendant Wiltison testified that the plaintiff and his agent Snyder, who was assisting him in making the sale of the car, both represented the car to be in first-class condition. It is insisted that this does not constitute an express warranty. Formerly it was held that to constitute an express warranty, it must be literally expressed, but it is now uniformly held that the form in which the affirmation is made is of little importance. Any affirmation made by the seller of personal property as to its quality at the time of the sale, or during the negotiations resulting in the sale, will be treated as a warranty, unless it appears that the purchaser did not rely thereon in making the contract. Williston on Sales, § 196. In this case the defendant Wiltison testifies, and his evidence is not contradicted, that the plaintiff represented to him that the automobile, while second-hand, was in good condition as far as he knew; and further, that the plaintiff's agent, who was also assisting in making the sale, represented that it was in first-class condition. The other two defendants also testify that before they signed the note sued on as surety for their son-in-law, the plaintiff himself represented to them that the automobile, while a second-hand one, was in first-class running order. It is also shown that the defendant Wiltison knew nothing about automobiles, and relied upon the representations made to him. He could not discover the defective condition of the machine without trying it. It is true, an attempt is made to show that he had a mechanic examine it, and that this mechanic told him it was all right. It appears, however, that all the examination this man made of it was to raise the hood and give a glance at the mechanical apparatus. We think the representations proved by the defendant were sufficient to constitute a warranty, or, to say the least, that they were sufficient to go to the jury on that question. Two former owners of the machine testify that it was worn out when they had it, and that it could not be put in good running order because of the fact that it was so badly worn, and parties who attempted to operate it after it was sold to the defendant Wiltison testify in regard to its unsatisfactory con-

dition. It also satisfactorily appears from the evidence that Wiltison seasonably made the tests to determine whether or not the automobile met the requirements of the warranty, and within a very few days offered to return it to the plaintiff and demand that his note be returned to him and the contract rescinded. Did he have the right to do this? Plaintiff insists that inasmuch as this was an executed sale, the defendant Wiltison did not have any right to rescind it and return the property, but that if there was a breach of the warranty he must keep the property and sue for damages on the warranty, or, in case he was sued for the purchase price, recoup such damages. There is no doubt but that he could do this, but is he bound to resort to that remedy? There was formerly considerable contrariety of opinion among the courts as to whether or not the purchaser of personal property could return the same upon discovering that it did not meet the requirements of a warranty, or whether he must keep the property and sue for damages for breach of the warranty. The Massachusetts Supreme Judicial Court announced the rule that where the title to the property had passed to the purchaser, and there was an express warranty, the purchaser had the right to inspect or test the property to see whether it complied with the warranty, and if it was found that it did not so comply, he might return it to the seller and rescind the contract. This rule, known as the Massachusetts Rule, was followed by many of the courts in this country. The New York Court of Appeals, on the other hand announced the rule that where the title to the property had passed, the purchaser could not return the property, upon discovering that it did not comply with the seller's warranty, but must retain it and sue for damages for breach of the warranty. This rule, known as the New York Rule, was followed by a considerable number of other states. The Uniform Sales Act recognizes the Massachusetts Rule as the correct one, and this Act has been adopted by a considerable majority of the American states, in fact by all of the great commercial states. Professor Williston in his work on Sales, while presenting both views, also takes the view that the

Massachusetts Rule is the correct one. Williston on Sale, § 608. We think it may be laid down as the law controlling in a case like this, that where the seller of personal prop- erty has expressly warranted it, the buyer, upon delivery. of the property to him, even though the title has passed and vested in him, may rescind the contract upon discovering that the warranty has been broken, provided he acts promptly and does not so use the property as to indicate that he has un- equivocally accepted it in satisfaction of the contract. In this case the evidence shows that the buyer promptly tested the machine and immediately, upon determining that it did not meet the requirements of the warranty, demanded re- scission of the contract. This was done within a very few days after the sale was made. There was no equivocal con- duct upon his part, but he expressed a determination to re- scind the contract at the earliest moment he could reasonably be expected to do so.

It is true, in the case of *Eagle Glass & Mfg. Co.* v. *Second Hand Pipe & Supply Co.*, 74 W. Va. 228, there is some lan- guage which would seem to indicate that where the title to the property has passed to the buyer he cannot return the same upon discovering a breach of the warranty. A reading of the opinion in that case, however, clearly shows that not only had the title passed, but that the buyer had used the property in his business, and did not make any ef- fort to rescind or return the property when he discovered the breach of the warranty, and that was the real ground upon which the decision was based. In *Ohio River Contract Co.* v. *Smith*, 76 W. Va. 503, the buyer was denied the right to re- scind upon the ground that he had not acted seasonably upon discovering the defect, and while it is not a point of decision in that case, the intimation is clear that if he had acted promptly upon discovering the breach of warranty his right to rescind would have been admitted.

We are of opinion that the court erred in striking out the defendant's testimony and directing a verdict for the plain- tiff. As the case stood at that time, without a denial of any of the facts presented by the defendants, they were entitled

to a peremptory instruction to find in their favor. We will, therefore, reverse the judgment complained of, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*