# CHARLESTON.

S. H. GIBSON *v.* W. H. ADAMS *and* W. M. TUCKER, *partners trading as Adams and Tucker.*

(No. 4612.)

Submitted November 6, 1923.     Decided April 7, 1925.

SALES—*Buyers Using Defective Engine After Knowledge of Defect Held to Have Waived Right to Rescind.*

The contract for the sale of an oil combustion engine provides that if on one day's trial by the vendees with proper care the property fails to work properly, they shall immediately give notice to the vendor stating wherein the property fails, and allow reasonable time for a competent man to be sent to put it in good order, and render necessary and friendly assistance to operate it; and that if the property can not then be made to work well, the vendees shall immediately return it to the vendor and the price paid shall be refunded, which shall constitute a settlement in full of the transaction.

In an action by the vendor against the vendees for the recovery of a purchase money installment, the latter, relying for defense upon rescission of the contract, aver: that the engine did not work properly upon one day's trial with proper care; that the vendor was given immediate notice thereof but failed to send a competent man to put the machine in good order; and that by reason of imperfect and defective parts the engine has proven unsatisfactory. The vendees, knowing the alleged defects, without assurance that the vendor would remedy the same, used the engine for more than four months before attempting to rescind the contract *Held:* The vendees had waived their right of rescission.

LIVELY and HATCHER, JUDGES, absent.

(Sales. 35 Cyc. p. 142.)

(NOTE:—Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

98 W. Va.

Error to Circuit Court, Clay County.

Action by S. H. Gibson against W. H. Adams and another, partners trading as Adams & Tucker. Judgment for defendants on appeal from a justice, and plaintiff brings error.

*Reversed and remanded.*

*S. W. Bryant, Hall Bros.* and *Blue & McCabe,* for plaintiff in error.

*J. E. Springston* and *F. P. Alderson,* and *B. C. Eakle,* for defendants in error.

LITZ, JUDGE:

The plaintiff complains of a judgment for defendants in an action on appeal from a justice. By agreement in writing between the parties, on the 21st day of August, 1920, plaintiff sold defendants one "30 H. P. type W, Mecca oil (stationary) engine", weighing four and one-half to five tons, for use by the latter in the operation of their flouring mill at Otter, Clay county. The contract provided for the payment of the purchase price of $1275.00 as follows: $300.00 upon delivery of the machine; $400.00 January 1, 1921; $300.00 April 1, 1921; and $275.00 July 1, 1921; the last three installments being evidenced by the promissory notes of defendants, payable to the order of plaintiff on the respective due dates of the said installments. The contract further stipulated:

"The seller hereby warrants the property herein ordered to be well made, of good material, durable with proper care, and when properly operated to perform successfully the work for which it is designed. If, within thirty days from date of purchase, a part proves defective, the new part to replace defective one will be furnished at the factory on receipt of part showing defect.

"Keeping and continuing to use the property without giving any notice of an alleged defect, or if defect has been remedied shall constitute an unconditional acceptance of the property and operate as full satisfaction of the warranty herein given.

"If, upon one day's trial with proper care, the
property fails to work properly, the purchaser shall
immediately give written notice to the seller stating
wherein the property fails, shall allow reasonable
time for a competent man to be sent to put it in good
order, and render necessary and friendly assistance
to operate it. If the property cannot then be made
to work well, the purchaser shall immediately return
it to said seller and the price paid shall be refunded,
which shall constitute a settlement in full of the
transaction.

"The purchaser understands and agrees that said
property is sold subject to the above written war-
ranties and no others, and that there are no oral or
implied warranties."

Upon delivery of the engine by the plaintiff to the de-
fendants, September 27, 1920, the latter paid to the former
the first purchase money installment of $300.00. The first
note also was paid at maturity but settlement of the second
note, not having been made when due April 1, 1921, this ac-
tion was instituted thereon May 1, 1921. Alleged defects in
the engine and failure of the plaintiff to furnish a competent
man to put it in good order constitute the grounds of de-
fense.

The defendants installed the machine the day of its arrival
by placing it on two small logs, fifteen inches and thirteen
inches respectively in diameter, resting upon the ground, and
the day following advised plaintiff by letter that it was not
functioning properly. The letter, which was not produced,
according to the testimony of the defendant Adams, did not
point out "wherein the property fails", but merely stated
that the defendants were unable to determine whether the
unsatisfactory operation was due to fault in the engine or im-
proper manipulation thereof. In response to the letter, how-
ever, the plaintiff promptly inspected the engine and found
that it was not being properly regulated to produce the re-
quired speed for effective service. He made the necessary ad-
justment, a very simple matter, and advised defendants to
secure from the manufacturer a book of instructions. After
making one or two more trips to observe the operation of

the engine, on or about October 16, 1920, plaintiff sent to inspect and test it one, Brock, who discovered that the defendants were again operating the engine at insufficient speed. He likewise made the necessary adjustment to accellerate the speed and left the engine running. Some time after plaintiff's first visit the defendants complained to him that the spark plug had been blowing out; but they continued to operate the engine and, without objection, paid the purchase money note due January 1, 1921. On February 12, 1921, and at other times thereafter, the defendants sent the plaintiff written request to take charge of and remove the engine from their premises. They now assert that the machine proved defective in the following particulars: the air damper was broken; the clutch would not hold without the use of a block of wood; the inlet valve was imperfect; the spark plug would blow out; on January 1, 1921, a cam gear wheel broke, later another one broke; the timing was bad; and the water and fuel tanks leaked.

The evidence tends strongly to prove that the alleged unsatisfactory operation of the engine was due to improper manipulation or defective parts which the plaintiff would have furnished in accordance with the contract on proper call of the defendants.

In July, 1921, plaintiff and one, R. G. Gumm, an expert mechanic, examined the engine and found, as they say: the defendants had extended the exhaust pipe without increasing its diameter; the timing and exhaust valve to the cylinder improperly adjusted; a piece of wood in the water tank, 3 inches wide, 5 inches long and 1½ inches thick, which reduced the capacity of the tank and interfered with the circulation of the water; that by reason of worn out gaskets and loose bolts, the water tank leaked; that there were sediment, dirt and strings around the bottom of the cylinder, and one and one half gallons of water therein; an improvised air damper; loose fly wheel; and the foundation upon which the engine rested unstable, causing unnecessary vibration of the machinery while the engine is in motion. Gumm testifies that the above conditions would produce unnecessary heating of the engine, resulting in the blowing out of spark plugs and

other serious consequences affecting the operation of the engine. He attributes the breaking of the cam gear wheel to the unstable foundation and loose fly wheel, and says further that after he had cleaned and adjusted the engine it operated satisfactorily on a test. It is apparent that the machine was not properly operated. The defendants admit that they would not follow instructions furnished by the manufacturer for its operation, or even return to the factory alleged defective parts for new ones, upon the ground that this would have interfered with the continuous operation of their mill. As an instance, the broken air damper was not returned for a new one. This part, although costing but a few cents, is highly important in the operation of the engine, as it regulates the flow of air for the gas and air mixture necessary to produce proper combustion in the cylinder. The defendants did not return the engine or offer to do so prior to the institution of suit, but retained and used it until February 12, 1921, with knowledge of the alleged defects without even attempting to rescind the contract.

Errors assigned go to the action of the trial court in granting certain instructions for the defendants, and refusing others on behalf of plaintiff. Defendants' instructions Nos. 2 and 5, complained of, direct a verdict for the defendants upon the jury's finding: (1) that after one day's trial with proper care the engine failed to work properly; (2) "that defendants immediately thereafter gave written notice thereof to the plaintiff"; (3) that the plaintiff failed to furnish a competent man to put the engine in good order within a reasonable time after the receipt of such notice; and (4) by reason thereof the engine did not perform successfully the work for which it was designed. Each of these instructions is improper for ignoring: (a) the vital requirement of the notice to state "wherein the property fails"; (b) failure of defendants to return or offer to return the engine; and (c) waiver of their right to rescind evidenced by retention and use of the machine for so long a time with knowledge of the alleged defects and payment without objection of the first purchase money note before attempting to rescind.

The defendant W. H. Adams states in his testimony that all of the alleged defects existed at the time the engine was delivered "with the exception of what broke, which broke after I got it." The only parts that are alleged to have broken after delivery of the engine were the cam gear wheel and the "governor blade", and he attributes the breaking of the former to imperfect meshing of the cogs which was necessarily known to him. No claim is made that the "governor blade" was defective.

The only evidence relied on to relieve the defendants from the force of the facts and circumstances conclusively establishing waiver of their right to rescind is the alleged statement of the plaintiff to the defendant Adams, on the occasion of one of the trips plaintiff made to see the engine before sending Brock, that "there is just some little thing you do not understand, just keep right on and it will be all right directly." This statement, if true, was no assurance to the defendants that the plaintiff would attempt to remedy alleged defects, but quite the contrary. No claim is made that the defendants were misled by this representation or opinion of the plaintiff, as particular pains are taken in behalf of the defendants to show not only that the plaintiff knew nothing about machinery, but that the defendant Adams was a competent and practical machinist of many years experience. Adams says Gibson told him on his first visit to see the engine that he did not know anything about it. There is also absence of proof that the plaintiff promised to send any one to examine the engine after the visit of Brock; so that the chief point relied on by counsel for defendants, the alleged failure of the plaintiff to send a competent man to put the engine in good order, loses significance. It is the position of the defendants that the machine was imperfectly made and that even an expert mechanic could not have put it in good order.

Adams states, in an effort to excuse the defendants from their action in retaining and using the engine for nearly five months without attempting to rescind the contract or returning alleged defective parts of the machine for replacement, "I bruised along and tried to do all I could." The retention

and use of the machine for so long a period by the defendants, with knowledge of the alleged defects, before attempting to rescind the contract, the admitted failure and refusal to follow the instructions furnished them by the manufacturer or to return the alleged defective parts of the engine for replacement, and payment without objection of the purchase money note, clearly constitute waiver on the part of defendants of their right to rescind the contract. It follows, therefore, that the trial court erred in refusing the rejected instructions in favor of the plaintiff, as well as in granting those complained of for the defendants. The suit was tried wholly upon the theory of defendants' right to recind the contract, and no evidence was adduced for the purpose of establishing damages by way of recoupment.

The judgment of the circuit court is reversed, the verdict of the jury is set aside, and a new trial awarded.

*Reversed and remanded.*