## SOUTHERN GYPSUM CO. v. UNITED PAPERBOARD CO.

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

No. 2382.

**1. Sales ⚖︎121, 176(5)—Buyer, using substantial part of shipment, held to have waived right to rescind, but not to abatement in price.**

Buyer of chipboard, which, while repeatedly rejecting a shipment in its correspondence with seller, at same time used substantial part thereof, *held* to have waived its right to rescind, though not right to abatement in price.

**2. Sales ⚖︎188—Buyer entitled to abatement in price on account of inferior quality equal to difference in value to it of quality contracted for and that delivered.**

Measure of abatement in purchase price, to which buyer of chipboard was entitled on account of inferior quality, *held* the difference in value to it of the chipboard contracted for and that shipped, where market was falling and value to it the same as market value.

**3. Sales ⚖︎188—Buyer entitled to abatement in price on account of inferior quality held entitled to credit for freight paid, but not on account of storage.**

Buyer, entitled because of defects to an abatement in price equal to difference between value to it at its mills of board contracted for and that delivered *held* entitled to a credit for amount of freight paid, though not on account of storage.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by the United Paperboard Company against the Southern Gypsum Company. Judgment for plaintiff, and defendant brings error. Affirmed, on condition that plaintiff remit a stated sum; otherwise, reversed and remanded for new trial.

Howard C. Gilmer, of Pulaski, Va., and J. P. Buchanan, of Marion, Va. (Buchanan & Buchanan, of Marion, Va., on the brief), for plaintiff in error.

Aubrey R. Bowles, Jr., and John S. Eggleston, both of Richmond, Va. (James Todd, of Chicago, Ill., and McGuire, Riely & Eggleston, of Richmond, Va., on the brief), for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. The United Paperboard Company sued the Southern Gypsum Company for $35,806.98, with interest, being the contract price at $115 per ton of 311.365 tons of chipboard sold and delivered f. o. b. cars plaintiff's mill. The parties were corporations of New Jersey and of Virginia, respectively. We will call them the seller and the buyer. The defense was that the goods furnished were not of the quality bargained for, and on that ground the buyer said it had rejected them altogether, or, in the alternative, that it was entitled to deduct from the price it had promised to pay the damage caused by the failure of the board to come up to specifications. The goods were shipped in August, 1920, and reached the buyer at various dates in that month and in early September. For the purpose of the questions upon which we are called upon to pass, it may be assumed that the buyer proved that the chipboard was not of the prescribed quality, and that its defects made it substantially less valuable to the buyer than it otherwise would have been, and that in due season on September 11, 1920, the buyer in writing rejected the chipboard and asked the seller to take it away, and repeated the rejection and the request in a number of other communications at subsequent dates. If this were all that there was in the case, it is obvious that the buyer was entitled to the instructed verdict for which it asked; but, unfortunately for it, the uncontradicted evidence shows that what it did is not reconcilable with what it wrote, for during the months of September, October, November, and December it continued to use the chipboard, and actually consumed 46 tons of it in making and in attempting to make its standard plaster board, although as late as the succeeding January it wrote the seller that the entire shipment was still untouched.

[1, 2] Clearly, as the learned judge below held, the buyer had waived its right to rescind, though not, of course, to an abatement from the contract price. The buyer complains of the rule laid down for the guidance of the jury in calculating how much that abatement should be. They were told to deduct from the contract price such sums as fairly represented the difference in value to the buyer for its own use between the chipboard shipped and the chipboard contracted for. Under all the circumstances of the in-

stant case, no rule more favorable to the buyer could have been formulated. At the time the goods were delivered their market price and the contract price were the same, and thereafter the former fell rapidly. As a further precaution the learned judge told the jury separately to find and return the market or selling value at the buyer's plant in September, 1920, of the chipboard actually delivered. Their verdict was for the seller for $26,823.75, and they found that at the time and place specified the chipboard was worth $86.25 per ton; that is to say, they reached the conclusion that the value of the board to the buyer was the same as the sum which at the time it could have gotten for it, had it chosen to sell. The buyer had used so much of the board that it was properly held to have accepted all of it. It was bound to pay for it, either what it was reasonably worth, or what it had promised to pay, less the damage caused it by the seller's breach. It is possible to differ as to whether that worth is to be that which it had to the buyer, to the seller, or to other persons who might have use for it; but in this case the controversy would be moot, as the jury by their findings have found the practical result would be the same, whichever rule was applied. Upon a falling market, the damage suffered by the buyer could be accurately measured by the difference between the value to it of the chipboard delivered and the price which it had promised to pay for good chipboard. What we here say is applicable to the special facts before us and perhaps to those only. If, at the time of delivery or of inspection, the market price had been higher than the contract price, the buyer, of course, would have been entitled to have the deduction so calculated as to preserve for it the benefit the rising market would have given it, had the seller kept its bargain.

[3] There is only one other matter upon which we find it necessary to comment. The instruction of the court required the jury to return a verdict for the seller for whatever they found the chipboard was actually worth to the buyer at its (the buyer's) mills. The buyer asked an instruction that it was entitled to have the jury deduct from this amount the amount of freight on the chipboard from seller's mills to its own, as well as compensation to it for storage of the board. These instructions the court refused. As the buyer had waived its right to rescind the contract, the chipboard belonged to it, and the seller had nothing to do with its storage. That is not so, however, as to the freight. It is true, by the terms of the original contract the buy-

er undertook to pay the freight, and if the jury had been told to measure the damages by the difference between the contract price at seller's mills at the time delivery should have been made of chipboard answering in all respects to the requirements of the contract, and the market price then and there of such chipboard as was actually delivered, the matter of freight could have been ignored, and should have been. The standard of recovery laid down was, however, the value of the chipboard to the buyer at its mills. Upon the theory of the court, that value was all the buyer could be required to pay for the goods delivered at its plant; but, as it had already paid the freight, it was entitled to have that amount deducted from the gross value to it. The amount so paid by it is definitely proved, and is not disputed. It was $2,310.43.

Since all other matters in dispute were settled in favor of the seller by the verdict of the jury under proper instruction, we shall follow the course taken by us in Mullins Lumber Co. v. Williamson & Brown Land & Lumber Co., 255 F. 645, 648, 167 C. C. A. 21, and give the option to the seller to accept the lowest possible verdict, rather than to submit all the issues to a new trial. It follows that the judgment of the District Court will be reversed, and the cause remanded for a new trial, unless the plaintiff shall pay all the costs in this court and shall remit in writing on the judgment in the District Court within 60 days $2,310.43, and that, if the plaintiff shall pay such costs and remit such sum of $2,310.43 within 60 days, the judgment of the District Court stands as affirmed.

Reversed nisi.