DIXIE APPLIANCE COMPANY

*v.*

E. CLYDE BOURNE

(No. 10556)

Submitted September 15, 1953. Decided October 20, 1953.

*Arthur F. Kingdon,* for plaintiff in error.

*Ira M. Smith,* for defendant in error.

GIVEN, JUDGE:

Plaintiff, Dixie Appliance Company, sold unto defendant, E. Clyde Bourne, twenty thousand feet of television cable, to be used in the construction and operation of television lines. Defendant operated his business in the name of General Auto Stores. The purchase price of the cable was $150.00 per thousand feet. The evidence is in sharp conflict as to whether the cable purchased was to be black core cable or white core cable, it being generally agreed that white core cable is of superior quality. The evidence is also in conflict as to whether the cable purchased was to be delivered in continuous lengths of not less than one thousand feet. In view of subsequent transactions, however, that fact appears to be immaterial.

Twenty thousand feet of black core cable was delivered by the seller to the purchaser. The purchaser was not satisfied with the cable received, principally because it was not white core cable and was not in continuous lengths of approximately one thousand feet. After considerable negotiations, the seller agreed with the purchaser to receive back the black core cable and to deliver in lieu thereof twenty thousand feet of white core cable, in continuous lengths of approximately twelve hundred feet. At the time of this arrangement the defendant knew that the seller did not have in its stock white core cable in lengths of approximately twelve hundred feet, and that the same would necessarily have to be purchased from a manufacturer. Later, at the request of the buyer, five thousand feet of white core cable, part

of the twenty thousand feet ordered, was delivered to the buyer. This five thousand feet of cable was accepted by the buyer and apparently used by him in his business. There appears to be no question that the buyer knew, when requesting the shipment of the five thousand feet of cable, that it would not be in continuous lengths of approximately twelve hundred feet. Still later the balance of the purchase was delivered by the seller to the buyer, by truck, and billed as "14 Reels RG11U Cable 14475 ft." These fourteen reels of white core cable were received by the purchaser in due course and by him placed in storage. The bill of lading covering the twenty thousand feet of black core cable was dated December 10, 1951. The bill of lading for the five thousand feet of white core cable was dated April 23, 1952. The bill of lading for the fourteen reels was dated May 2, 1952. The purchaser, on May 13, 1952, mailed his check to the seller for the balance of the purchase price of the cable shipped to him, but stopped payment thereon before the check was honored.

The buyer "used two-thirds" of the white core cable in his business. Before he had used the "two-thirds", he discovered that seven reels thereof remaining on hand, or approximately 7,040 feet, did not contain cable in continuous lengths of approximately 1,200 feet. At least some of the cable used by the buyer was of lengths considerably less than 1,200 feet. The buyer now contends that he should be required to pay only for the cable used, and that the seller should be required to accept return of the seven unused reels.

The seller brought an action for the purchase price of the nineteen reels of white core cable. Defendant made timely tender of the purchase price of the cable used by him, but not the purchase price of the seven reels, which tender was not accepted. A verdict was returned in the following language: "We, the jury, find for the defendant, E. Clyde Bourne, all unused 7 rolls of cable to be returned to Dixie Appliance Company, for credit." After overruling the motion of plaintiff to set aside the ver-

dict, the court entered judgment on the verdict to the effect "that the plaintiff take nothing by its said case and that the defendant, E. Clyde Bourne, doing business as General Auto Stores, do recover" costs.

From the facts stated, the controlling question arises: Was acceptance of part of the fourteen reels of cable shipped on the second day of May, 1952, an acceptance of that entire shipment? For the purpose of this case, we need not consider any rights of the parties as they relate to the two prior shipments. As to those shipments, the buyer has no right to complain. The parties agreed to modify the original contract, as it related to them, and have performed in accordance with the modification.

In 16 M. J., Sales, Section 33, it is stated: "Where the goods ordered and the goods sent are the same, an acceptance by the buyer is not essential to complete the bargain. If in such a case the buyer refuses to accept the authorities are clear that the rights and remedies of the seller are just as complete as if there had been a full and formal acceptance. And if the buyer delays unreasonably in accepting the goods, he is liable for damages sustained by the seller, although guilty of no deception or fraud." Even where goods are shipped to a person who did not order them, such person is liable for the purchase price if he fails to return the goods or to notify the seller within a reasonable time that he refuses to accept them. *Ford* v. *Friedman,* 40 W. Va. 177, 20 S. E. 930; *Thompson* v. *Douglass,* 35 W. Va. 377, 13 S. E. 1015; *Bartholomae* v. *Paull,* 18 W. Va. 771.

Defendant contends, however, that the contract for the purchase of the cable was severable, and that acceptance of part of the shipment of fourteen reels did not amount to an acceptance of the entire shipment. See 16 M.J., Sales, Section 37; 77 C.J.S., Sales, Section 226. In *Norman Lumber Co.* v. *Keystone Manufacturing Co.,* 100 W. Va. 515, 524, 131 S.E. 12, this Court pointed out characteristics of a sales contract which is entire, and also of one which is severable, in this language: "A con-

tract is entire, and not severable, when by its terms, nature and purposes it contemplates and intends that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent. On the other hand, a severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be. Hence, an action may be maintained for a breach of it in one respect and not necessarily in another, or for several breaches, while in other material respects it remains intact. In such a contract the consideration is not single and entire as to all its several provisions as a whole; until it is performed it is capable of division and apportionment. Thus, though a number of things be brought together without fixing an entire price for the whole, but the price of each article is to be ascertained by a rate or measure as to the several articles, the contract in such case may be treated as a separate contract for each article, although they be included under one contract. If it appear that the purpose was to take the whole or none then the contract would be entire; otherwise it would be several. This rule makes the interpretation of the contract depend on the intention of the parties as manifested by their acts under the circumstances of each particular case * * *".

In *Manss-Bruning Shoe Co.* v. *Prince,* 51 W.Va. 510, 41 S.E. 907, the seller shipped an order of shoes to the buyer. Upon arrival the buyer refused to accept the shoes, one of the reasons for the refusal being "that some of the shoes were inferior to the samples by which the order was given". In the letter of refusal the buyer stated that he could "use a few of them, if you desire". The seller did not indicate any willingness that the buyer use only a part of the goods. Later, the buyer "looked over the goods and kept just as many as I could use, and sent the rest back". The Court held: "3. A pur-

chaser of goods cannot keep part of them, and return the remainder, and defeat payment for them according to the contract on the ground that the part returned were not of the agreed quality or make."

In *Hartland Colliery Company* v. *Burns*, 112 W. Va. 44, 163 S. E. 714, the purchase was of a carload of lumber, at a certain price per thousand feet. The Court held: "Where a contract for sale of lumber is not severable, the purchaser having a right to rescind, must do so in whole and not in part. He cannot re-sell a part of the lumber, and store the remainder subject to removal by the seller, without becoming liable for the whole."

In *Ohio River Contract Co.* v. *Smith*, 76 W. Va. 503, 85, S.E. 671, the sale was of steel sheet piling at $25.00 per ton. Upon its arrival at the place to which the purchaser ordered it shipped, the purchaser received it and "conveyed it to the place at which it was to be used". Approximately one-fourth of the piling was actually used, but with difficulty because of defects therein, and effort to use the remainder was abandoned. The buyer was held liable for the entire shipment. The Court pointed out that "a fair test could have been made without the use of one-fourth of the entire quantity". The Court held:

"1. A purchaser of personal property, to avail himself of his right to be relieved from his obligation to pay the purchase money, by rejection of the subject of the sale for non-compliance with a condition thereof or by rescission of the contract for fraud or other sufficient cause, must reject or return the property *in toto* and thus place the vendor *in statu quo* as nearly as may be."

"2. Acceptance and retention of part of the property by the purchaser, is a waiver of conditions, misrepresentations and fraud and binds him to payment of the whole of the purchase price, subject to his right of recoupment to the extent of the damages resulting from breach of warranties, if any."

In the opinion the Court stated: "* * * The law rec-

ognizes no partial rejection of the subject of a sale, for non-compliance with a condition and rescission, to be effective, must go to the entire subject matter of the contract. In this respect, the rules governing rescission and rejection for non-compliance with conditions are identical. In the one case, the annullment of the contract must be total and complete; in the other the purchaser must reject *in toto*. In each, the opposite party must be put *in statu quo* * * *". Also of special significance is the following language found in that opinion: "Under this hard and fast rule of the law of sales, relaxation of which public policy forbids in the interest of certainty and stability of commercial transactions, the evidence of conditions, misrepresentation and defects and unfitness which might have afforded ground for rejection or rescission goes for naught. All these rights are deemed by the law to have been waived or abandoned by partial acceptance of the piling, whether the defendant actually intended to give them up or not." See *Rice & Co.* v. *Roberts,* 114 W. Va. 549, 172 S. E. 615; *McMullar Co.* v. *Champion Coated Paper Co.,* 103 W. Va. 637, 138 S. E. 755; *Great Eastern Refining Corporation* v. *Shank,* 99 W. Va. 101, 127 S. E. 922; *Gibson* v. *Adams & Tucker,* 98 W. Va. 671, 127 S. E. 514; *Kemble* v. *Wiltison,* 92 W. Va. 32, 114 S. E. 369; *American Sugar Refining Co.* v. *Martin-Nelly Grocery Co.,* 90 W. Va. 730, 111 S. E. 759; *Eagle Glass & Manufacturing Co.* v. *Pipe & Supply Co.,* 74 W. Va. 228, 81 S. E. 976; *Ellison, Son & Co.* v. *Grocery Co.,* 69 W. Va. 380, 71 S. E. 391, 38 L.R.A., N.S., 539.

From these cases, we necessarily conclude that the contract in the instant case was not severable. Only one lot of cable was purchased. Only one shipment thereof was contemplated by the original contract of purchase, which was not in any manner modified in so far as the fourteen reels were concerned. Nothing whatever indicates that the parties had any intention that the buyer would have the right to accept only part of the shipment. In such circumstances, the buyer was bound to accept the entire shipment, not select a part thereof.

The buyer in the instant case relies heavily upon the decision of *Reynolds* v. *Avery*, 132 Va. 355, 111 S. E. 123, wherein it was held that the acceptance and use of 339 sticks of a shipment of 800 sticks of piling did not preclude the right of the buyer to reject the remaining 461 sticks. The facts in that case, however, are strikingly different. The contract under which the piling was delivered was not for a specific bill of goods. It was under a general contract whereby the purchaser was to accept piling of "no specific quantity", and it was specifically agreed that the acceptance of the piling by the buyer was to be through his inspector, at certain landings, "with the right to reject such piling as did not meet the standard size and length requirements, and as was not of merchantable quality and condition". Moreover, the partial acceptance was made under the mistaken belief that the existing defects resulted from the buyer's own delay in making the inspection. In such circumstances the Court necessarily held that such partial acceptance did not raise an implied acceptance of all of the 800 sticks of piling.

Assuming, however, that the contract of sale in the instant case was severable, defendant's contention can not prevail. The evidence is clear that defendant could easily have discovered that the lengths of cable on the seven reels in question were not of approximate lengths of 1,200 feet before receiving any part of the shipment. Actually, he was informed by the bill of lading that each of the fourteen reels did not contain cable of lengths of approximately 1,200 feet. Obviously each of "14 Reels of RG11U Cable 14475 ft." could not contain 1,200 feet. Instead of making an examination thereof, he received the entire shipment, placed it in storage, and made no immediate complaint concerning the shipment. From time to time he used parts thereof in his business. After he had used, or decided to use, one half of the fourteen reels, he attempted to reject delivery of the seven reels. Prior to that time he had used cable in lengths much less than 1,200 feet. He had executed and mailed to the

seller his check covering the entire purchase price. These acts indicating ownership of the cable constituted an acceptance of the entire shipment. "An acceptance may be indicated by the exercise of acts of ownership, or acts inconsistent with the ownership of the seller, as by removing the goods from the place of delivery, branding cattle, requesting the seller to retain possession for the buyer, or taking an inventory and acceptance of keys to a building where the property is stored. Even where goods are not ordered, but are voluntarily sent to one, his receipt of them and exercise of ownership over them may constitute an acceptance and preclude him from denying his liability for the price." 77 C.J.S., Sales, Section 223. See *Great Eastern Refining Corporation* v. *Shank, supra; Gibson* v. *Adams & Tucker, supra; Kemble* v. *Wiltison, supra; American Sugar Refining Co.* v. *Martin-Nelly Grocery Co., supra; Southern Gypsum Co.* v. *United Paperboard Co.,* 11 F. 2d 58.

Application of the principles herein referred to renders any consideration of other assignments of error useless. No question has been raised as to the peculiar form of the verdict returned by the jury.

From the conclusions reached, it necessarily follows that the judgment of the Circuit Court of Mercer County must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

> *Reversed;*
> *verdict set aside;*
> *new trial awarded.*