PETROPLUS, JUDGE:
This matter came on for hearing on September 10, 1969, upon a Petition filed by Highway Engineers, Inc., Claimant, against *69 the State Road Commission of West Virginia, Respondent, giving notice of a claim in the amount of $11,774.81. The claim is based on a Contract between the Claimant and the State Road Commission dated March 2,1965, wherein the Commission employed the Claimant as Consulting Engineers to provide certain professional services and furnish all labor, materials and equipment necessary to supply information and data that would be required in the preparation of a Preliminary Engineering Report for the consideration of the Respondent in determining the most feasible and economical location of a roadway between the City of Williamson in Mingo County to the vicinity of the intersection of U. S. Route 119 with West Virginia Route 3 near Danville, Logan County, a total distance of approximately 77 miles. The Contract, after the project description, provided that the service to be rendered by the Claimant was to be divided into two separate and independent phases. Phase I was designated as “PRELIMINARY REPORT”, and the Consultant thereunder, upoh written Notice to proceed, was to supply certain exploratory technical information consisting of Aerial Mosaics for all corridors indicated on the Sketch Map attached to the Contract and covering an area of 241 square miles. Phase I also included seeming data from Topographical Maps indicating grade lines showing locations of possible drainage structures, overhead and underpass structures and possible interchanges. For this work, the Respondent agreed to and did pay the Consultant a lump sum fee of $50,400.00.
Phase II of the Contract is entitled “PRELIMINARY ENGINEERING REPORT” and stated that upon the completion and approval of all the work under Phase I, and the selection by the Commission of corridors for additional study, the Consultant, upon written Notice to proceed, was to complete the study and prepare cost estimates and reports for the most feasible and economical location of a roadway within each corridor designated and approved by the Respondent for further study. For the work to be performed under Phase II, the Contract provided that a lump sum fee of $119,637.00 to be paid, which fee was based on a complete study for 160 miles of acceptable final study lines. The portion of the Contract which creates the issue in this case reads:
*70 “If, after completion and review of work on Phase I, it is agreed that more or less mileage than 160 miles are agreed to for final study, adjustments will be made to the final fee on a basis of Seven Hundred Forty-eight Dollars ($748.00) per mile”.
The total estimated fee of $170,037.00 was stated to be the maximum amount payable under this Contract without a Supplemental Agreement for any additional work. Payments under both Phases of the Contract were to be made monthly, based on Progress Reports submitted by the Consultant, and the Commission was to retain 10% of the earned fee until the completion and acceptance of the work.
The grievance of the Claimant rests on a letter of the Commission dated November 29, 1965, to proceed with a designated portion of the work outlined in Phase II, “PRELIMINARY ENGINEERING REPORT”, which directed the Claimant to proceed with work on Phase II for a distance of only approximately 33.0 miles of study lines. The study lines were limited to a small area surrounding Williamson. No further work was authorized by the Respondent under Phase II of the Contract.
The Claimant was offered payment for the work performed on Phase II at the rate of $748.00 per mile, or 'an aggregate compensation of $24,684.00, for which there is no dispute but takes the position that it suffered damages in the amount of $11,774.81, representing a loss incurred in performing the work directed under Phase II as a result of the action of the Respondent in altering the scope and terms of the Contract by limiting the work to be performed under Phase II to 33.0 miles rather than 160 miles as contemplated by the Contract.
The Respondent answered admitting substantially all of the facts of the Complaint but denied any liability to pay the Claimant the sum of $11,774.81, alleged to be the damages sustained by the Claimant. Respondent further denied any deviation from the terms of the Contract or any alteration of its scope and terms.
The parties submitted their case on a Stipulation of Facts and Exhibits which were admitted into evidence without proof as to the authenticity of the documents, but subject to objection *71 by the parties as to admissibility or relevancy. No evidence was taken at the hearing.
The lengthy recital of the above facts is required for an understanding of the Court’s Opinion in this matter.
The issue before the Court requires a construction and interpretation of the terms and provisions of the Contract between the Claimant and the Respondent. The intention of the parties must be ascertained from the language employed, and from the subject matter of the Contract. No rule can be laid down by which it may be determined whether the Contract is entire or severable. A Contract to do several things at several times, the parts not being necessarily dependent upon each other and particularly where the consideration is apportioned among various items, is ordinarily regarded as severable and divisible. The prime criterion is the intention of the parties, and the conduct of the parties in performing the Contract has a bearing on its proper interpretation. American Chlorophyll v. Schertz, 176 Va. 362, 11 S.E. (2d) 625, Dixie Appliance v. Bourne, 138 W.Va. 810, 77 S.E. (2d) 879. It is the opinion of the Court that the Contract in question, which was divided into two phases, Phase I, for supplying exploratory information and data, and Phase II, a complete Preliminary Engineering Report, using the information collected under Phase I as a basis for the report, constitutes a divisible Contract.
The Claimant was paid the sum of $50,400.00 upon the completion of Phase I which covered the total distance of approximately 77 miles from Williamson to Danville, West Virginia. Upon the completion and review of the work on Phase I, the Commission requested and required only a part of the additional work specified in Phase II by giving a Notice to proceed to the Consulting Engineers to complete their study, make cost estimates and report on approximately 33 miles of study lines from Belo to Williamson, from Delbar-ton to Williamson and from Belo to Delbarton. The Notice to proceed with this work was in a letter dated November 29, 1965, addressed to the Claimant by the State Road Commission. The Claimant proceeded with this work and was offered and paid compensation for the 33 miles at the rate of $748.00 per mile. Payments were made monthly based on Progress Re *72 ports submitted by the Consultant after the usual retainage. As the Court interprets the Contract, the Respondent had no legal obligation to request a stipulated or minimum amount of work under Phase II. The Claimant undoubtedly anticipated more work under Phase II than it actually received, but their wishes and anticipations do not establish a legal right; nor do they establish an ambiguity in the Contract. As we interpret the Contract, upon the completion of Phase I and the payment of the stipulated lump sum, the Respondent reserved the legal right to abandon the project, disapprove it, or refuse to give the Notice to proceed with Phase II or any part of Phase II. The compensation for Phase II, although first stated in a lump sum of $119,637.00, based on a complete study for 160 miles, is qualified by an additional formula of adjustment, which states that more or less mileage than 160 miles will result in adjustments to the final fee on a basis of $748.00 per mile. It is the opinion of this Court that the Contract sum for Phase II was meant to be a maximum amount payable under .the Contract without a Supplemental Agreement, 'and that no minimum payment is prescribed by the terms of the Contract.
The reduction of the work to 33 miles of study under Phase II does not constitute a material change in the scope and terms of the Contract as contended by Claimant, but on the contrary was contemplated by the terms and provisions of the Contract. The result admittedly works an inequity for the Claimant, but the Court is constrained to apply principles of law to its decisions rather than correct inequities or make a new agreement for the parties, in the absence of a showing of fraud, accident or mistake or other grounds which would justify the reformation of the agreement.
The State Road Commission had a legal right to prescribe the corridors and the number of miles to be studied under Phase II of the Agreement. This it did by the letter of November 29, 1965, directing the Consultants to proceed within a limited scope of 33 miles. The Commission stands ready to pay the balance owing for this work in the amount of $3,134.86, said amount not being involved in this controversy. Upon submission of an invoice by the Claimant, this amount will be processed and approved for payment.
*73 The caveats in dealing with a public agency are well established in the law 'and where a contract is divisible and based on unit prices, we must assume that the contracting parties contemplate a partial performance and partial compensation under the contract. The Exhibits admitted by Stipulation, consisting of correspondence between the parties, attempt to bring into the Contract statements made during the period of negotiation which clearly are not admissible under the Parol Evidence Rule to vary or alter the terms of a written Agreement. The Agreement is clear and unambiguous and represents the final agreement of the parties 'and evidence may not be admitted to contradict, add to, alter, enlarge or explain a written Agreement or vary its legal effect. Shaffer v. Calvert Fire Insurance Company, 135 W.Va. 153. It is the further finding of this Court that a proper interpretation of the Contract made Phase II entirely optional with the Respondent and that Phase II was conditioned not only upon completion of the work under Phase I but the review and approval of the work under Phase I by the Commission. The failure of the Claimant to make any protest at the time it received the Notice to proceed with a small portion of the work under Phase II by letter of November 29, 1965, and the submission of monthly progress invoices, indicate acquiescence with our interpretation of the Contract. It was not until the letter of February 20, 1967, to the State Road Commission from the Claimant, almost 15 months later, that the Claimant raised the question of minimal project termini and reduction in fee based on a straight per mile basis. We find nothing in the Contract that commits the Respondent to a maximum mileage under Phase II.
The additional fee request, which is in the nature of losses sustained by the Claimant in the amount of $11,774.81 for the work actually done under Phase II, cannot be considered as a claim for damages when there is no showing that the Respondent breached any provisions of the Contract.
For the foregoing reasons, the Court is of opinion to and does hereby disallow the claim.
Claim disallowed.